# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Slate Hills Enterprises, Inc.,　　　　　　　:
　　　　　　　　　Appellant　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
The Zoning Hearing Board of　　　　　　:
Portland Borough and Borough of　　　　:　No. 1467 C.D. 2022
Portland　　　　　　　　　　　　　　　:　Submitted: September 11, 2023


BEFORE:　　HONORABLE PATRICIA A. McCULLOUGH, Judge
　　　　　　　HONORABLE ANNE E. COVEY, Judge
　　　　　　　HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE COVEY　　　　　　　　　　　　　　FILED: October 13, 2023


　　　　Slate Hills Enterprises, Inc. (Slate Hills) appeals from the Northampton County Common Pleas Court's (trial court) November 17, 2022 order affirming the Portland Borough (Borough) Zoning Hearing Board's (ZHB) July 14, 2022 decision that denied Slate Hills' variance applications. Slate Hills presents one issue for this Court's review: whether the ZHB erred by failing to find that Slate Hills' variances were dimensional variances subject to a lesser burden of proof for establishing a hardship.[1] After review, this Court affirms.

---

[1] Slate Hills stated its issue in terms of whether the *trial court* erred. However, where, as here, "the trial court took no additional evidence, our review is limited to determining whether the *ZHB* committed an error of law or an abuse of discretion." *DiMattia v. Zoning Hearing Bd. of E. Whiteland Twp.*, 168 A.3d 393, 397 n.2 (Pa. Cmwlth. 2017) (emphasis added). Thus, "[o]ur standard of review . . . pertains to whether the [ZHB], not the trial court, erred or abused its discretion." *In re Brickstone Realty Corp.*, 789 A.2d 333, 338 n.2 (Pa. Cmwlth. 2001). This Court has restated the issue accordingly.

Slate Hill owns an unimproved, approximately one-acre parcel of real estate (Northampton County Tax Parcel Identification No. B11SE3A5-1-0127) adjacent to Route 611 along the eastern side of Delaware Avenue in the Borough (Property). The Property is located in the Borough's medium density residential (R-2) zoning district, which permits, *inter alia*, multi-family homes.

Slate Hills purchased the Property from A31 Land Trust (A31) by quitclaim deed, without a title search, for $4,500.00 on March 10, 2020. To assess the Property's condition and attendant risks, Slate Hills' President and sole shareholder Peter J. Iselo (Iselo) relied on a visual inspection of the Property. Iselo observed that the Property contained steep slopes. After acquiring the Property, Slate Hills commissioned a survey that revealed a stormwater drainage pipe crossed the Property in the non-steep slope areas.

On July 14, 2021, Slate Hills submitted a zoning application and accompanying plans to the Borough to construct a three-story, six-unit apartment building on the Property (Application). In the Application, Slate Hills requested several variances. Relevant to this appeal, Slate Hills sought a variance from the minimum 25-foot front yard setback requirement in Section 405.2.F.1 of the Borough of Portland, Pennsylvania Zoning Ordinance (Ordinance) (2015) to permit a 16-foot setback. Slate Hills also sought a variance from the requirement in Section 508.1.F of the Ordinance that at least 50% of the area to be used for a building or construction purpose shall be on slopes of less than 15% to permit a higher percentage as shown on Slate Hills' plans. The Borough's zoning officer denied the variance requests, and Slate Hills appealed to the ZHB.

The ZHB conducted hearings on August 19, and October 21, 2021, and on March 23, April 21, and June 23, 2022. At the hearings, members of the general public and neighbors opposed the variance requests, primarily arguing that the proposed building does not fit the character of the neighborhood of modest homes,

2

and Slate Hills could instead build a single-family home without the variances. The ZHB granted the following Borough residents party status: Donald Cawley, Amanda LaForest, Julie Hopler-Kramer, William Kramer (Kramer), Mary Stewart, James Montgomery, Denise Nangle, Russell Palumbo (Palumbo), Yvonne Gumaer, Michael Kovonuk, and Lance Prator.

On July 14, 2022, the ZHB denied Slate Hills' variance requests, concluding:

> 3. Slate Hills failed to prove that any unnecessary hardship was not self-created.
>
> 4. Any unusual physical or topographical conditions affecting the Property were readily apparent at the time of purchase.
>
> 5. Slate Hills has failed to prove that the Property cannot reasonably be used without the requested variances.
>
> 6. The [ZHB] denies the variance requests of Slate Hills for relief from [] Section 405.2.F.1 [of the Ordinance], minimum front yard setback of 25 feet, and Section 508.1.F [of the Ordinance], steep slopes, as they do not propose the least modification necessary of the R-2 district zoning regulations to afford relief to Slate Hills.

ZHB Dec. at 6. Slate Hills appealed to the trial court.

The Borough filed a notice of intervention in the trial court on August 29, 2022. The trial court held oral argument on October 25, 2022. On November 17, 2022, the trial court affirmed the ZHB's decision. Slate Hills timely appealed to this Court.[2]

---

[2] As stated previously herein, *see supra* note 1, this Court's review "is limited to determining whether the ZHB committed an error of law or an abuse of discretion." *DiMattia*, 168 A.3d at 397 n.2. "An abuse of discretion will be found only where the [ZHB's] findings are not supported by substantial evidence. Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081, 1085 n.1 (Pa. Cmwlth. 2017)

On January 17, 2023, the trial court directed Slate Hills to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Slate Hills filed its Rule 1925(b) Statement on January 23, 2023. On January 31, 2023, the trial court issued an opinion pursuant to Rule 1925(a) (Trial Court Opinion). The Borough is principally aligned with the ZHB.

Initially, "[a] variance is a departure from the exact provisions of a zoning ordinance." *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 547 (Pa. Cmwlth. 2019).

> A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations, whereas a use variance involves a request to use property in a manner that is wholly outside zoning regulations. [*See*] *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, . . . 721 A.2d 43 ([Pa.] 1998).

*Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 520 (Pa. Cmwlth. 2014).

Relevant here, Section 405.2.F.1 of the Ordinance specifies that all uses must have a minimum front yard setback of "25 feet measured from the front line[.]"[3] Ord. § 405.2.F.1; Original Record, Index of ZHB Exhibits Item III.(b), Ordinance, at IV-6. Section 508.1.F of the Ordinance provides:

> Steep slopes shall be defined as slopes in excess of [25%]. Slope[s] shall be measured at the points where any earth will be disturbed or where structures or other improvements are proposed. For use of sites partially or

---

(quoting *Hertzberg v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 46 (Pa. 1998)).

[3] Although that provision expressly excludes multi-family dwellings from other dimensional regulations reflected in Section 405.2.F of the Ordinance, multi-family dwellings are subject to the minimum setbacks specified therein. *See* Ord. §§ 405.2.F.1, 603 (relating to exceptions to Section 405.2.F of the Ordinance not applicable here).

4

wholly included within an area identified as steep-sloped, the following performance standards shall be met: . . .

. . . .

F. At least [50%] of the area to be used for any building or construction purposes shall be less than [15%] slope.

Ord. § 508.1.F; Ordinance at V-70. Slate Hills sought dimensional variances to reduce the front yard setback from 25 feet to 16 feet, and to increase the percentage (more than 50%) of its proposed building that could be constructed within the Property's slopes greater than 15%.

Section 907.1 of the Ordinance details the Borough's standards for a property owner to obtain a variance:

The [ZHB] may grant a variance only in accord with the requirements of [Section] 910.2 of the [Pennsylvania Municipalities Planning Code (]MPC[),[4]] provided that **all** of the following findings are made where relevant in a given case. The applicant shall have the burden of proof to show compliance with such standards.

A. Unique Physical Circumstances or Conditions - That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this Ordinance in the neighborhood or [zoning d]istrict in which the property is located.

B. Necessary for Reasonable Use - That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this Ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

C. <u>Self-Creation</u> - That such unnecessary hardship has not been created by the [applicant].

D. <u>Neighborhood; Adjacent Property; Public Welfare</u> - That the variance, if authorized, will not alter the essential character of the neighborhood or [zoning] district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

E. <u>Minimum Variance</u> - That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Ord. § 907.1; Ordinance at IX-8-9 (emphasis in original); *see also* Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a).

Importantly, "[t]he same criteria apply to use and dimensional variances." *Tri-Cnty. Landfill*, 83 A.3d at 520. The law is well settled that "[t]he [ZHB] has no discretion to grant a variance unless it finds that *all* of the above-enumerated conditions are met." *Doris Terry Revocable Living Tr. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 873 A.2d 57, 62 (Pa. Cmwlth. 2005). However, although "[t]he overriding standard for a variance is unnecessary hardship[,]" *id*. at 63, "in *Hertzberg*, our Supreme Court set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance[.]" *Tri-Cnty. Landfill*, 83 A.3d at 520.

The *Hertzberg* Court held:

When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

6

*Id.* at 47.  This Court has explained:

> In determining if a party has met its burden to demonstrate unnecessary hardship for a dimensional variance, the courts may consider multiple factors, including the economic detriment to the applicant, whether the cost to conform the property to the zoning ordinance is prohibitive, and the characteristics of the surrounding neighborhood.  [*See Hertzberg.*]

*Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011);

*see also Vineyard Oil & Gas Co. v. N.E. Twp. Zoning Hearing Bd.*, 215 A.3d 77 (Pa.

Cmwlth. 2019).

> Where no hardship is shown, or where the asserted hardship amounts to a landowner's desire to increase profitability or maximize development potential, the unnecessary hardship criterion required to obtain a variance is not satisfied even under the relaxed standard set forth in *Hertzberg*.  *See, e.g.*, *Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of* [*the*] *City of Pittsburgh*, 997 A.2d 423 (Pa. Cmwlth. 2010).

*Tri-Cnty. Landfill*, 83 A.3d at 520.

> This Court has cautioned:

> Ever since our Supreme Court decided *Hertzberg*, we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted.  *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship.  It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance.  However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses.  This well-established principle, unchanged by *Hertzberg*, bears emphasizing in the present case.  A variance, whether labeled dimensional or use, is appropriate "only where the *property*, not the

7

person, is subject to hardship." *Szmigiel v. Kranker*, . . . 298 A.2d 629, 631 ([Pa. Cmwlth.] 1972) (emphasis in original). . . .

As this Court recently noted:

> [W]hile *Hertzberg* eased the requirements . . . it did not make dimensional requirements . . . "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were [sic] the case, dimensional requirements would be meaningless - at best, rules of thumb - and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time.
>
> *Soc['] y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 771 A.2d 874, 878 (Pa. Cmwlth. 2001).

*Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001).

Slate Hills argues that the ZHB abused its discretion by denying the Application without taking into consideration the lesser standard for dimensional variances the Pennsylvania Supreme Court established in *Hertzberg*, which Slate Hills claims it satisfied.

At the ZHB hearings, Slate Hills argued that the variances were necessary because it was not possible to build any conforming residential building on the Property without them because the drainage pipe and the 25-foot front yard setback take up much of the steep slope area. Specifically, Engineer Geoff K. Dean (Dean) testified on Slate Hills' behalf that the Property's topography makes it difficult to comply with Sections 405.2.F.1 and 508.1.F of the Ordinance, and Slate Hills' proposed plan avoided extreme violations of both provisions and blended with

8

the neighborhood's character, while also allowing for constructability and viability. *See* Reproduced Record (R.R.) at 65a, 70a. Dean estimated that buildings on adjacent properties encroach within the 25-foot front yard setbacks.[5] *See* R.R. at 64a-65a, 148a-150a, 201a.

Dean described that the proposed building will be approximately 2,400 feet in area, 30 feet wide from east to west by 80 feet long. *See* R.R. at 74a-75a, 88a, 193a. He recalled that the Property has nearly a 40% steep slope, so Slate Hills has to build in an area that has greater than 15% slopes. *See* R.R. at 45a, 62a-63a.

Dean declared:

> [T]here are a number of factors that led to the building being proposed where it is. The steep slopes we're talking about will obviously affect the construct[a]bility of the building, but the reason we've proposed it where it is, is we're trying to, as you mentioned before, mitigate several -- several [sic] conditions. And rather than proposing an extreme condition either for the front yard setback or for the steep slopes, we're trying to find a balance and find a location that is buildable and viable but also doesn't – isn't drastically out of character for the other structures that exist currently.

R.R. at 64a. Dean opined that Slate Hills cannot move the building farther north to lessen interference with the steep slopes because the "[drainage pipe []] runs from west to east through [the P]roperty and connects to the storm water system in Route 611." R.R. at 66a. In his professional opinion, Slate Hills should not move the building any closer than seven feet from the drainage pipe because Slate Hills could not excavate or pour a foundation without damaging the drainage pipe. *See* R.R. at 68a-69a, 152a. Dean acknowledged that, currently, Slate Hills can only build south

---

[5] Dean did not look at the front yard setback distances on the four properties across the street from the Property, but did not doubt Palumbo's declaration that they all complied with the 25-foot setback. *See* R.R. at 195a. Iselo did not look at those properties because they are not similarly encumbered by steep slopes that force buildings into the setbacks. *See* R.R. at 330a.

of the drainage pipe; if the drainage pipe did not cross the Property, Slate Hills could place the building in a location less intrusive of the steep slopes and the front yard setback, but it would still need the requested variances. *See* R.R. at 153a-154a, 159a-168a, 236a-240a. He stated that, although Slate Hills could locate its parking over the pipes, that would not reduce the needed variances. *See* R.R. at 133a.

Dean explained that Slate Hills could not move the building farther west on the Property to decrease interference with the steep slopes because that would encroach on setbacks from other properties, and overhead power lines that provide electricity to Delaware Avenue property owners are not feasible to move and make it impossible for necessary construction equipment access. *See* R.R. at 67a-70a.

Dean opined that moving the proposed building farther east would result in more disturbance and impact on the steep slope areas. *See* R.R. at 70a, 73a. Specifically, Dean explained:

> [A]long the southern facade it would increase the vertical drop by about seven feet and the same on the north side which, in addition to exacerbating the variance requests that we would be -- that we would be asking for, for impact to the steep slopes, it also presents construct[a]bility issues, from a practical perspective, with retaining walls and excavation, once you place the majority of the building on that slope embankment.

R.R. at 71a.

Dean claimed that even a single-family or double home would need variances from the Ordinance to avoid violating the 25-foot setback or encroaching onto the steep slopes. *See* R.R. at 74a-75a, 154a. When asked: "Is there essentially any principal use in the residential district one could make on this rather topographically challenging lot, that could be constructed without a variance?" Dean responded: "Given the topographical constraints and also the zoning ordinance requirements, no, there's not." R.R. at 75a; *see also* R.R. at 154a, 208a.

10

However, when asked: "Why couldn't [Slate Hills] build . . . a 1[,]500 square foot house instead and put two parking spots on that property?" Dean admitted: "[F]rom a site and topographic standpoint, [it] could." R.R. at 88a; *see also* R.R. at 91a, 121a (acknowledging there are other permitted uses besides multi-family dwellings in the Borough's R-2 zoning district, including single-family dwellings, two-family dwellings, and day care facilities), R.R. at 130a-132a. In addition, Dean agreed that the proposed building is larger than the other, single-family dwellings on adjacent lots, and that reducing the size of the proposed building would reduce the need to encroach on the allowed front yard setback and steep slopes. *See* R.R. at 126a, 128a, 137a-139a. Dean further related that if Slate Hills designated the front of the Property as facing Route 611, it would not need a variance from the front yard setback, but would still require the steep slopes variance and, possibly, could not even be built because of the 60% steep slopes and construction and safety issues. *See* R.R. at 139a-143a, 155a.

Dean acknowledged his understanding that one of the Borough's variance criteria requires that a property owner must resolve a problem with the least intensive use of a property (i.e., most minimal variance). *See* R.R. at 134a. He added that the Property's physical characteristics create Slate Hills' hardship, not the Ordinance. *See* R.R. at 139a-140a. Notwithstanding, Dean declared:

> Q. The steep slopes that are on that [P]roperty there, they're in that neighborhood generally. Do you agree that there's steep slopes that go in between Delaware Avenue and Route 611?
>
> A. Yes. Generally, on the [e]astern side of Delaware Avenue, most of the properties, if not all, have some degree of slopes.
>
> Q. That's not something that's unique to that [P]roperty in that area, is it?
>
> A. The slopes, no.

11

Q. And, of course, anyone buying that [P]roperty, it would be obvious that there's steep slopes on the [P]roperty when they bought it, correct?

A. Sure.

R.R. at 134a-135a; *see also* R.R. at 155a.

Iselo testified that he has been a builder/developer who has built hundreds of houses in Monroe, Northampton, and Lehigh counties, and in Summit, New Jersey for approximately 30 years, and he has actual knowledge of what makes a property marketable. *See* R.R. at 259a, 261a. He explained that Slate Hills purchased the Property from A31, which purchased it from the Northampton County Tax Claim Bureau out of a repository sale for $151.00, so Slate Hills was aware that the Property's value was nearly zero. *See* R.R. at 291a, 489a. Iselo declared that the Property consists of approximately one acre, on which Slate Hills proposed the three-story, six-unit building consisting of four two-bedroom apartments and two one-bedroom apartments, with two stories visible from the front (facing Delaware Avenue), and three stories visible from the rear. *See* R.R. at 272a-275a, 304a. Iselo related that Slate Hills asked its architect to design the building with exterior features that would blend with the community, although he admitted that the proposed building would have more square footage than the surrounding homes.[6] *See* R.R. at 277a, 302a, 317a.

Iselo represented that he looked at the Property before Slate Hills purchased it and observed the steep slopes, but estimated that Slate Hills could place a building approximately where the adjacent property owners located buildings on their parcels. *See* R.R. at 268a-269a, 294a, 342a-343a. Specifically, Slate Hills had

---

[6] Iselo clarified that it is difficult to compare new building construction and markets to homes built 30 to 40 years ago, particularly in light of buyers' differing desires and environmental requirements. *See* R.R. at 308a-309a.

purchased the Property with the intention of building on the northernmost, widest, flattest side of the Property. *See* R.R. at 243a.

Iselo recalled that the Property's initial title search did not show the drainage pipe. *See* R.R. at 242a. Although he acknowledged that the drainage pipe's inlet was visible next to the Property on the west side, he claimed that he was not aware that it traversed the Property until after Slate Hills purchased the Property, conducted a survey to determine whether there were any problems, and began digging because the land documents he obtained were not accurate.[7] *See* R.R. at 243a-246a, 294a-299a, 314a, 474a-482a. Iselo stated that he did not observe the drainage pipe from Route 611 until approximately August or September 2020. *See* R.R. at 477a, 487a-489a. Iselo explained that, but for the drainage pipe, Slate Hills would, at most, have needed a front yard setback variance; Slate Hills could not build any building on the Property that complied with the 25-foot front yard setback. *See* R.R. at 247a, 256a-257a. He clarified: "[I]f the pipe wasn't there, [Slate Hills] would not need relief from the slope[.]" R.R. at 340a; *see also* R.R. at 482a, 484a.

Iselo described that he measured the properties numbered 702 to 714 on the same side of Delaware Avenue as the Property,[8] from the ultimate right-of-way to the buildings, and determined that they are all located within 25 feet (702 is 14 feet; 704 is 21.7 feet; 708 is 22 feet; 710 is 22 feet; and the 712-714 apartment building is 18.17 feet). *See* R.R. at 250a-256a. He stated that the steep slopes get closer to Delaware Avenue the farther one looks, and pushes potential construction farther into the steep slopes, creating financial problems. *See* R.R. at 258a. Iselo

---

[7] Iselo did not request a survey before Slate Hills purchased the Property because Slate Hills did not want to expend the money, and the risk of unknown problems was worth the money Slate Hills paid. *See* R.R. at 485a-487a, 490a-491a. Iselo learned from Slate Hills' engineer (who was also the Borough's engineer) that the drainage pipe was not accurately depicted on the Property's survey. *See* R.R. at 475a-476a, 490a.

[8] The closest property, 700 Delaware Avenue, is a vacant lot. *See* R.R. at 251a.

13

expressed: "The slopes become a problem so onerous to overcome you would not be able to sell the product that you build and even break even. You'd lose money. You go out there - it's a money loser to start . . . even in this market." *Id.* In Iselo's opinion, without the requested variances, Slate Hills could only build a 20- by 30-foot (i.e., 600 square foot) single-family home on the Property and, even with two stories (i.e., 1,200 square feet), without a yard and garage, it would not be marketable.[9] *See* R.R. at 260a-261a. Iselo confirmed that Slate Hills did not present any financial calculations to the ZHB, or an engineering analysis of a smaller building that would require a lesser variance. *See* R.R. at 307a, 311a. He declared that Slate Hills did not bother, because it cannot build such a house on a slope "and sell it for enough money[;]" it would be a waste of time. R.R. at 308a-310a, 335a. Iselo added that, although it is not easy, he has successfully built homes on slopes like the ones on the Property, either by digging into them or building retaining walls, which Slate Hills' engineers will determine if the variances are approved. *See* R.R. at 319a-320a, 322a-323a, 336a.

Palumbo stated at the hearing that "this [P]roperty has a problem with a steep slope. But it's not unique to this [P]roperty. All those properties have a steep slope." R.R. at 328a; *see also* R.R. at 450a. He added that, as an experienced builder, Iselo should have observed the drainage pipe that is visible to anyone who walks the Property. *See* R.R. at 450a. He also opined that Slate Hills could build a single-family home on the Property with a 20- by 40-foot footprint on the Property's northeast corner that would not require a setback variance. *See* R.R. at 451a-452a, 457a.

Kramer owns the properties located at 700-702 Delaware Avenue, and he disclosed that his 1920s home has only a 16-foot front yard setback. *See* R.R. at

---

[9] Iselo declared that he has not built a single-family home in the past 15 years that did not also have a yard and a garage. *See* R.R. at 262a-263a.

33a-34a, 368a-369a, 427a. He testified that, although the drainage pipe is underground and not visible from Delaware Avenue, it is a 12- to 14-inch corrugated black plastic pipe that extends out of the ground on the Property and "[i]t's very hard to miss it" from Route 611. R.R. at 354a; *see also* R.R. at 353a, 416a-419a, 423a-425a, 429a; Kramer Exs. 1-2; Borough Ex. 5. He added: "All the properties on the east side of Delaware Avenue have a steep slope associated with them and they're relatively narrow in depth. It's not unique to that particular site." R.R. at 364a-365a. Kramer further opined that Slate Hills' hardship was self-created because it purchased a relatively inexpensive property with notice of its drainage pipe and steep slope limitations and, rather than proposing a single-family home consistent with the rest of the neighborhood, Slate Hills proposed an apartment building that required additional variances. *See* R.R. at 365a-366a.

Importantly, "[a]lthough *Hertzberg* eased the requirements for a variance, it did not remove them." *Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 507 (Pa. Cmwlth. 2018). Thus, "[a]n applicant must still present evidence as to each of the conditions listed in the zoning ordinance[.]" *Tri-Cnty. Landfill*, 83 A.3d at 520. And, "despite a more relaxed standard, it is still the case that '[t]he burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious[,] and compelling.'" *Pequea Twp.*, 180 A.3d at 507 (quoting *Singer*, 29 A.3d at 149). Therefore, in addition to unique circumstances and conditions creating unnecessary hardship, Section 907.1.E of the Ordinance required Slate Hills to prove "[t]hat the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue." Ord. § 907.1.E; Ordinance at IX-9.

Moreover, the law is well settled that "[i]n a land use proceeding, the [ZHB] is the ultimate fact-finder and the exclusive arbiter of credibility and

evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011). "As the fact[-]finder, the [ZHB] has the power to reject even uncontradicted testimony if the [ZHB] finds the testimony to be lacking in credibility." *Heritage Bldg. Grp., Inc. v. Bedminster Twp. Bd. of Supervisors*, 742 A.2d 708, 710 (Pa. Cmwlth. 1999). Further, the ZHB's decision is entitled to deference in light of its expertise in and knowledge of local conditions. *See Marshall v. City of Phila.*, 97 A.3d 323 (Pa. 2014).

Here, in denying the Application, the ZHB found that "[t]he steep slopes involved in this variance request are integral to many properties along the eastern side of Delaware Avenue and are not unique to the [Property]." ZHB Dec. at 3 (Finding of Fact 14). In addition, the ZHB determined:

> Slate Hills proposes to build a six[-]unit apartment building for the Property. Slate Hills produced extensive testimony regarding its variance requests but failed to meet its burden of proof in two key areas. While such a building is theoretically permitted within the Borough's R-2 zon[ing district], there is no zoning requirement that the Property only be developed with a six[-]unit apartment building. Slate Hills may want to construct a building of this size for its own financial reasons[,] but nothing in the Ordinance requires Slate Hills to construct [] the proposed structure when a different plan may fit within the R-2 zon[ing district] with lesser variance requests, if any at all. Similarly, **the Property's topography and its obvious steep slope[s] were always readily apparent.**[FN]2 **Coupled with Slate Hills' proposed six[-]unit plan that significantly intrudes on the parcel's steep slope[s], the requested variances cannot be considered the minimum modifications to the regulations under the Ordinance**.
>
> > [FN]2 The [P]roperty is [also] subject to a drainage pipe which Slate Hills contends was undiscoverable and[,] therefore[,] affords a basis

16

> for the requested variances. Exhibits submitted disclosed that a substantial portion of the drain[age] pipe was visible above ground.

ZHB Dec. at 5 (emphasis added). The trial court affirmed the ZHB's decision because "the [ZHB] had a sufficient evidentiary basis to conclude that the variances . . . were greater than necessary to allow for a reasonable use of the Property." Trial Ct. Op. at 15.

> To the extent the [ZHB], as fact[-]finder hearing the evidence firsthand, assessed witness credibility or resolved conflicts in the testimony, we do not supplant those determinations. *See Nettleton v. Zoning Bd. of Adjustment of Pittsburgh*, . . . 828 A.2d 1033, 1041 n.10 ([Pa.] 2003). *See generally Commonwealth v. Johnson*, . . . 231 A.3d 807, 818 & n.7 ([Pa.] 2020). As well, although [Slate Hills] bore the burden of proof before the [ZHB] with regard to the prerequisites for a variance, *see Appeal of Bilotta*, . . . 270 A.2d 619, 620 ([Pa.] 1970), at the appellate level we review the record in the light most favorable to [the Borough], as the prevailing party before the agency, and give [it] the benefit of all reasonable inferences arising from the proofs adduced. *See Cinram Mfg., Inc. v. W[orker's] C[omp.] A[ppeal] B[d.] (Hill)*, . . . 975 A.2d 577, 583 ([Pa.] 2009); *Lawrenceville Stakeholders v. City of Pittsburgh Zoning Bd. of Adjustment*, 247 A.3d 465, 473 (Pa. Cmwlth. 2021).

*Kneebone v. Zoning Hearing Bd. of Twp. of Plainfield*, 276 A.3d 705, 715 (Pa. 2022).

Viewing the evidence in the Borough's favor as this Court must, we conclude that substantial evidence supported the ZHB's findings and conclusions that Slate Hills did not satisfy all of the standards in Section 907.1 of the Ordinance necessary to obtain the requested variances. Accordingly, despite that the ZHB did not expressly find that Slate Hills' variances were *dimensional* variances subject to a lesser burden of proof for establishing a hardship, the ZHB properly applied the law and denied Slate Hills' Application based on the proffered evidence.

17

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Slate Hills Enterprises, Inc.,    :
      Appellant   :
          :
    v.      :
          :
The Zoning Hearing Board of   :
Portland Borough and Borough of : No. 1467 C.D. 2022
Portland        :

# O R D E R

  AND NOW, this 13th day of October, 2023, the Northampton County Common Pleas Court's November 17, 2022 order is affirmed.

           _____
           ANNE E. COVEY, Judge