## DORIS TERRY REVOCABLE LIVING TRUST, Appellant

v.

## ZONING BOARD of Adjustment OF the CITY OF PITTSBURGH and Michael Seate and Kim Love.

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 2005.

Decided April 28, 2005.

Jeffrey L. Braun, Pittsburgh, for appellant.

Derwin Rushing, Pittsburgh, for appellees, Michael Seate and Kim Love.

BEFORE: COLINS, President Judge, SIMPSON, J., and LEAVITT, J.

OPINION BY Judge LEAVITT.

The Doris Terry Revocable Living Trust (Trust) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) upholding a variance that had been granted by the Pittsburgh Zoning Board of Adjustment (Board) to Michael Seate and Kim Love (collectively Intervenors). The variance in question was granted for a motorcycle garage that had been constructed by Intervenors, without any approval and in violation of applicable zoning requirements, on a lot immediately adjacent to the Trust's property.[1] The Trust asserts that Intervenors' case, completed in seven minutes, was completely inadequate to show hardship, as needed for the grant of a variance.

The adjoining lots of the Trust and of Intervenors are located in an historic, residential district (R1–AH) in the North Side of the City of Pittsburgh; each lot is twenty-feet wide and fronts on Monterey Street. Doris Terry lives in the house belonging to the Trust, which is situated at the rear of the lot, thirty feet back from Monterey Street; the rear wall of her house abuts Day Way, an alley. Terry's house shares a common wall on one side, and on the other side is Intervenors' lot. Intervenors' house[2] is placed at the front of their lot, closer to Monterey Street, and

---

1. Even so, the variance granted to Intervenors did not render their garage lawful because one wall of their garage is set on the Trust's property line and not set back 2½ feet as provided in the variance. Accordingly, Intervenors suggest that this Court modify the variance to make the dimensions of the garage lawful.

2. Intervenors' house is also a party-wall house, but the party-wall is on the side opposite the Trust's lot.

their garage is located at the rear of their lot, next to Terry's house. The rear wall of the garage abuts Day Way, and its side wall abuts the Trust's property line. Indeed, this wall of this garage is 3–½ feet from the kitchen windows of Terry's house; the 3½ feet of land between the two buildings belongs to the Trust.

On June 16, 2003, the Zoning Administrator issued a Statement of Noncompliance to the Intervenors because their garage violated the setback requirements of the zoning ordinance.[3] Intervenors appealed, seeking Board approval to erect a 15′ × 10′ one-story garage in the rear yard of the existing 2–½ story dwelling.[4] The appeal sought variances from the provisions of the Pittsburgh Zoning Code that require property line set backs of ten feet from side lines and two feet from the rear boundary for any building.[5] The Board held a hearing on July 10, 2003, to deter-mine whether dimensional variances would be granted.

At the hearing, Seate appeared for Intervenors, and Terry appeared for the Trust. The hearing lasted seven minutes.[6] Terry presented eight photographs that showed placement of the structures on the two lots, the close proximity of the houses in the neighborhood, and the proximity of the garage to her kitchen windows. Terry testified that the garage blocked her kitchen windows, and the music and motorcycle noise emanating from the garage destroyed the quiet enjoyment of her home.[7]

Seate acknowledged that he built the garage without applying for a variance. The garage is a 15′ × 10′ single story structure, eleven feet high, and has a peaked roof. He also stated "couldn't get a contractor in to settle the ground" and that "[t]hey would have to take out two 60 foot trees."[8] Notes of Testimony at 9

---

**3.** The Statement advises that "applications denied by the Zoning Administrator may be appealed to the Board of Adjustment" for one of two reasons: "1) Disagreement with the 'interpretation' of the provisions of the Zoning Ordinance made by the Administrator or 2) to request a 'Variance' or 'Special Exception.'" Reproduced Record at 28A (R.R. ——). Intervenors filed a form appeal from the decision of the Zoning Administrator requesting a variance by checking the appropriate box on the form.

**4.** Although the application was presented in the future tense, in reality the application was for an existing structure, *i.e.*, the garage. Intervenors' request for the variance on the Application for Appeal, paraphrased above, reads as follows:

> Erect a 15′ × 10′ 1–story gar in rear yd exist 2½-sty 1–fam patywl dwlg w/6′ high wood fence along S side & rear property line.

R.R. 29A.

**5.** The Statement of Noncompliance cites § 903.03.D.2 of the Pittsburgh Zoning Code providing minimum interior side yard setback in R1–AH subdistricts of ten feet; and § 912.04.B providing set back from the rear

lot line adjacent to a way of at least two feet. R.R. 28A.; PITTSBURGH, PA., ZONING CODE §§ 903.03.D.2; 912.04.B (2003) (Zoning Code). The Statement of Noncompliance recited that the garage was set back 2–½ feet from the rear and side. Photographs from the record demonstrate that the garage was constructed on the Trust's boundary line and not 2½ feet from the property line.

**6.** The Notes of Testimony indicate that the hearing convened at 1:13 P.M. and concluded at 1:20 P.M.

**7.** She admitted that the noise diminished somewhat after she complained to Seate.

**8.** In response to questions from Regis D. Murrin, Chairman of the Board, the following exchange occurred in which Board member Clifford B. Levine and Zoning Officer, Michael T. O'Brien, Terry and Seate participated:

> Mr. Murrin: You can't see his place from this picture?
> Ms. Terry: Well, this is it. This is a picture of it. Here's a closer picture. The red house is my neighbor's that I share a wall with on Day Street. My house is the lighter one.

(N.T. ——), R.R. 41A. Seate offered to put a flat roof on the garage to reduce the obstruction of Terry's kitchen window.

On July 17, 2004, the Board granted the requested variance in a one-page letter. The Board found the variance to be reasonable, given the narrow width of the property and that the "[o]pposition has not established evidence to the contrary." R.R. 69A. The variance reduced the ten foot side set back to 2–½ feet and it reduced the two foot rear set back to zero feet.[9] The Trust appealed to the trial court.[10] Without taking further testimony, on March 19, 2004, the trial court affirmed the decision of the Board and dismissed the Trust's appeal. In its July 12, 2004, Opinion the trial court summarized the decision of the Board as follows:

> Mr. Murrin: Is there a tree that's overhanging there?
> Mr. Seate: Yes. I couldn't get a contractor in to settle the ground. They would have to take out two 60 foot trees.
> Mr. Murrin: Did a contractor give you an estimation?
> Mr. Seate: For putting down six inches on two-by-fours and railroad ties had to be done and the roof flattened and lowered.
> Mr. Murrin: No historic review?
> Mr. Levine: It's in the lower—down to the ground. It doesn't have a concrete footer.
> Mr. Murrin: What do you mean by lower?
> Mr. Seate: Five or six inches.
> Mr. Murrin: What's maximum from the height?
> Mr. O'Brien: 15 foot lower.
> Mr. Seate: Six inches more and I can put a flat roof on it to please the neighbors beyond her kitchen window. I could do that.
> Mr. Levine: I mean, he's trying.
> Ms. Terry: What about the noise?
> Mr. Levine: He is entitled to have a motorcycle.
> Ms. Terry: What about yearly, I have to listen to the noise, to the music?
> Mr. Murrin: Do you want to agree to something?
> Mr. Levine: Discuss it. If not, we'll decide it. Thank you.
> N.T. 9–10, R.R. 41A–42A.

The Board concluded that the unique physical characteristics and conditions created an unnecessary hardship for the Intervenors. The property is not able to be developed in rigid conformity with the Zoning Ordinance provisions, so the variance is necessary to enable the reasonable use of the property. The Board of Adjustment also concluded that the variance will not alter the essential character of the neighborhood, and that the allowances for the garage represent the minimum variance and the least modification from the relief requested.

Opinion at 4. Because the trial court agreed with the Board's conclusions, it affirmed. The Trust then appealed to this Court.

■ On appeal,[11] the Trust presents two issues. First, the Trust contends that In-

9. The Board's decision contained two conditions: (1) an Historic Certificate of Appropriateness must be obtained and submitted to the Zoning Administrator prior to obtaining a building permit; and (2) all requirements of the building code must be met prior to the issuance of an occupancy permit. The conditions do not account for the fact that the garage was built and occupied prior to Intervenor's submitting a variance application.

10. Seate and Love filed a Notice of Intervention on September 16, 2003, with the trial court.

11. In zoning appeals, as here, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning hearing board committed an abuse of discretion or an error of law. *Baker v. Chartiers Township Zoning Hearing Board*, 677 A.2d 1274, 1276 (Pa. Cmwlth.1996). A conclusion that the zoning hearing board abused its discretion may be reached only if the zoning hearing board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Bailey v. Upper Southampton Township*, 690 A.2d 1324, 1325 n. 1 (Pa.Cmwlth.1997).

tervenors failed to present evidence that would support the legal conclusions necessary to the grant of a variance. Second, the Trust contends that because the record is woefully lacking in evidence, the Board assumed facts not of record thereby giving Intervenors a pass with respect to their burden of proof. In sum, the Trust contends that the trial court erred in affirming the Board.

The Trust correctly states the general rule that to obtain a variance, a landowner bears the heavy burden of proving that he suffers from an unnecessary hardship, which hardship is not self-imposed, and that granting the variance will not adversely affect the public health, safety, and welfare. *Bruni v. Zoning Hearing Board of Plymouth Township,* 52 Pa.Cmwlth. 526, 416 A.2d 111 (1980). In *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh,* 543 Pa. 415, 672 A.2d 286 (1996), our Supreme Court established four criteria that must be satisfied in order

for a landowner to show a compelling reason for a variance.[12] Intervenors counter that these factors are to be considered in granting a *use* variance. They claim to have sought a *dimensional* variance, which is a type of variance more easily obtained. In *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998), our Supreme Court explained that "the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 258, 721 A.2d at 48.[13]

Pittsburgh's Zoning Code addresses the subject of variances without regard to whether the variance is a use or a dimensional variance.[14] It states as follows:

No variance in the strict application of any provisions of this Zoning Code shall be granted by the Zoning Board of Adjustment unless it finds that *all* of the following conditions exist:

---

**12.** The factors for a variance established in *Larsen* are as follows:

(1) that an unnecessary hardship exists which is not created by the party seeking the variance and which is caused by the unique physical circumstances of the property for which the variance is sought;

(2) that a variance is needed to enable the party's reasonable use of the property;

(3) that the variance will not alter the essential character of the district or neighborhood, or substantially or permanently impair the use or development of the adjacent property such that it is detrimental to the public's welfare;

(4) that the variance will afford the least intrusive solution.

*Larsen,* 543 Pa. at 421, 672 A.2d at 289.

**13.** Intervenors maintain that because the narrow, unique physical characteristic of the lot, their property cannot be developed in strict conformity with the Zoning Code. Citing to *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997) and *Wagner v. City of Erie Zoning Hearing Board,* 675 A.2d

791 (Pa.Cmwlth.1996), Intervenors argue that a variance to avoid an unnecessary hardship applies to a building not only the land. In addition, because Intervenors could not find a contractor to "settle the ground" and that two sixty foot trees would need to be removed, they demonstrated unnecessary hardship under the *Hertzberg* lesser quantum of proof. N.T. 9, R.R. 41A.

**14.** It is not entirely clear that under the Zoning Code that the Intervenors' garage requires only a dimensional variance to be lawful. Section 912.03 makes a garage an "accessory use" by right. ZONING CODE § 912.03. However, Section 925.06.G.1 provides that a garage is a "permitted feature" that can be built upon grant of an Administrator Exception. ZONING CODE § 925.06.G.1. To obtain an Administrator Exception, the applicant must show, *inter alia,* that the wall of the accessory structure is no "closer to the neighboring property than the applicant's existing building" and that the proposed use "will not be injurious to the use and enjoyment of other property in the immediate vicinity...." ZONING CODE § 925.06.G.2(a) and (c).

1. That there are *unique physical circumstances* or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, *and that the unnecessary hardship is due to the conditions, and not the* circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located;

2. That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore *necessary to enable the reasonable use of the property;*

3. *That such unnecessary hardship has not been created by the appellant;*

4. That *the variance,* if authorized, *will not* alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently *impair the appropriate use or development of adjacent property,* nor be detrimental to the public welfare; and

5. That *the variance, if authorized, will represent the minimum variance* that will afford relief and will represent the least modification possible of the regulation in issue.

In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement to purposes of this act and the zoning ordinance.

*The applicant shall have the burden of demonstrating that the proposal satisfies the applicable review criteria.*

ZONING CODE § 922.09.E (emphasis added).[15] The Board has no discretion to grant a variance unless it finds that *all* of the above-enumerated conditions are met. Even if we accept Intervenors' premise that a lesser quantum of evidence is required under *Hertzberg,* there must be some evidence presented on each of the conditions listed in Section 922.09.E before the Board can grant a variance. Given the record here, the Board did not, and could not, find that all conditions needed for a variance were found to exist in the case of Intervenors' garage.[16]

**15.** Appellant and Appellee cite to Section 909.05 of the Pittsburgh Code of Ordinances as the applicable ordinance. This Section was in effect when *Larsen* was decided in 1996. The current Zoning Code became effective on February 1, 2003, and it was the law in effect when Intervenors were issued a notice of violation on June 16, 2003.

**16.** The Board's findings and conclusions were as follows:

The proposed garage was built about 2–1/2 years ago. It is 11′ high and houses a motorcycle. Photographic exhibits were presented into evidence. It is located at the far rear end of the property, abutting Day Way. The garage is located further away from the side property lines than the dwelling structure; and, the structure on the adjacent property maintains a 0′ setback along Day Way. The adjacent owner was present in opposition, alleging that the garage blocks her view and that Appellant spends time in the garage at night, with the door open, playing music and running his motorcycle. Her dwelling is located at the far rear end of her property, abutting Day Way. The Board finds that the requested dimensional variances to be reasonable given the narrow 20′ width of the zoning lot. Opposition has not established evidence to the contrary. The subject property is located in a City of Pittsburgh Historic District and is subject to approval by the Historic

■ The overriding standard for a variance is unnecessary hardship. At the hearing Intervenors did not define their hardship, economic or otherwise, and they offered no evidence as to why the particular placement of the garage was required to avoid the unspecified hardship. Intervenors argue, however, that other factors support a finding of hardship. They note that Seate is a nationally recognized expert on motorcycles whose work includes a regular column in the Pittsburgh Tribune, six books and appearances on national news programs, such as the CBS Evening News. Seate makes his living from writing about motorcycle riding, etiquette and safety, and his motorcycle is his only form of transportation. He does not know how to operate a vehicle. Intervenors also argue that the neighborhood is dotted with garages large enough to house an automobile that "dwarf" Intervenors' more modest structure.

■ It may well be that Seate needs the garage and that he will suffer a professional hardship in its absence.[17] It may also be the case that the character of the neighborhood will be unaffected by the addition of the Intervenors' garage. We may not, however, consider these facts in evaluating the validity of the variance because they are not in the record. The Board members appear to have drawn on their personal knowledge of Seate and of the neighborhood, but this knowledge is not a valid substitute for evidence of record. Intervenors were required to place this evidence on the record, assuming its relevance to hardship, and they failed to do so.

Further, there is nothing in the record to support a finding that the variance granted was the "minimum" variance that will afford relief and will represent the least modification possible of the regulation in issue. Zoning Code § 922.09(E)(5). There was no finding that the garage would not "impair the appropriate use ... of adjacent property." *Id.* at § 922.09(E)(4). It is impossible to determine whether the garage could have been located elsewhere on the lot so as to minimize the impact upon the Trust's adjoining property, or whether the Board should have imposed conditions or safeguards upon the garage so as to make the structure more consonant with the purposes of the Zoning Code. *Id.*

Also troublesome is the fact that the Board appeared to shift the burden of proof from the applicant to the Trust by noting the opposing party's failure to prove the requested variance unreasonable. Terry did, in fact, offer photographs and testimonial evidence on the unfortunate effect of the garage, located three feet from her kitchen window, upon her use and enjoyment of her property. This issue was not even addressed by the Board. It was required, however, to find that a variance would *not* "impair the appropriate use ... of adjacent property." Zoning Code § 922.09E(4).

■ Finally, the Board granted a variance to permit the continued use of a structure that was erected in violation of the Zoning Code. The Zoning Code, however, requires a finding that the hardship

---

Review Commission, prior to obtaining a building permit.
R.R. 69A. A review of the Board's decision shows that, contrary to the trial court's characterization, the Board did not make the findings required by Section 922.09.E.

**17.** Seate's testimony about trees and the unevenness of the ground may relate to hardship

arising from the condition of the land. Nevertheless, it is too vague to support the conclusion that a garage could only be built in the precise location where it was placed and had to be built in the exact proportions as those chosen.

has "not been created by the appellant." Zoning Code § 922.09E(3). In *Appletree Land Development v. Zoning Hearing Board of York Township*, 834 A.2d 1214 (Pa.Cmwlth.2003), we held that a landowner whose porch, violated a setback requirement by one foot, in one corner, was not entitled to a variance because the hardship was of the landowner's own making. We explained that "[t]here is a strong policy against assisting landowners who violate a zoning ordinance, whether negligently or intentionally, long apparent in this Court's jurisprudence." *Id.* at 1218. The burden of zoning compliance is upon the landowner; his failure to determine the zoning requirements applicable to the construction of a building on his property cannot be the basis for establishing an unnecessary hardship. Stated otherwise, the fact that Intervenors may be required to dismantle or reconstruct their existing garage is not a hardship because this is a situation of their own making.

In sum, the Board's grant of an after-the-fact variance for Intervenors' garage was improperly sustained by the trial court because Intervenors' evidence fell wide of the mark established in the Zoning Code for the grant of a variance. Intervenors did not present evidence on each of the relevant criteria and, thus, did not prove a hardship. The Board assumed facts not of record, which is always improper, to relieve Intervenors of their evidentiary burden, but even so, the Board did not assume enough facts to support a conclusion that the requested variance satisfied each requirement specified in Section 922.09.E of the Zoning Code.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 28th day of April, 2005, the order of the Court of Common Pleas of Allegheny County dated March 19, 2004, in the above-captioned matter is hereby reversed.