IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Gately-Wilson,              :
                 Appellant       :
                               :
          v.                   :
                               :
Upper Mount Bethel Township Zoning  :
Hearing Board, John Ross, and Ruth  :   No. 872 C.D. 2024
Ross                          :   Argued: April 8, 2025

BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE LORI A. DUMAS, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                  FILED: May 1, 2025

Before this Court is an appeal by Sarah Gately-Wilson (Objector) from an order of the Court of Common Pleas of Northampton County (Common Pleas) that affirmed an order of the Upper Mount Bethel Township (Township) Zoning Hearing Board (Board). The Board granted a variance to John Ross and Ruth Ross (Applicants) for primary driveway access to their property (Property) from an alley rather than a public road. Upon review, we conclude the record lacks substantial evidence in support of the Board's decision,[1] and we reverse Common Pleas' order and remand to Common Pleas.

---

[1] Because Common Pleas took no additional evidence on appeal from the Board's decision, this Court's review is limited to determining whether the Board committed an error of law or manifestly abused its discretion; such an abuse of discretion occurs only where the Board's findings are not supported by substantial evidence. *1825 Rt. 309 Allentown, LLC v. Zoning Hearing Bd. of S. Whitehall Twp.*, 309 A.3d 187, 190 n.2 (Pa. Cmwlth. 2024) (citing *Artisan Constr. Grp., LLC v. Zoning Hearing Bd. of Upper Pottsgrove Twp.*, 275 A.3d 80, 84 n.5 (Pa. Cmwlth. 2022)).

# I. Background

Applicants purchased the Property in 2018. Reproduced Record (RR) at 64a. The Property contains roughly 31 acres of farmland and no structures. *Id.* at 66a. In 2017, Applicants' predecessors in title placed the Property under the burden of an agricultural easement (Agricultural Easement) in favor of Northampton County Farmland Preservation (Farmland Preservation). *Id.* at 72a, 109a & 119a. The terms of the Agricultural Easement allow construction of a residence and related structures on the Property, limited to a maximum area of two acres. *Id.* at 67a, 74a, 121a-22a, 128a & 134a.

The Property has about 300 feet of road frontage on Sagen Drive, a public road in the Township. RR at 82a-83a. After purchasing the Property, Applicants obtained a change of address for the Property from 210 Sagen Drive to 978 Sunrise Boulevard. *Id.* at 108a-09a. However, the Property has no frontage on Sunrise Boulevard. *Id.* at 68a. Applicants' sole access to the Property from Sunrise Boulevard is via a private alley over which their chain of title burdens the Property with a right-of-way in favor of Objector and others. *Id.* at 68a & 152a-53a. Objector uses the alley as a farm road to access her farmland at 934 Sunrise Boulevard. *Id.* at 161a.[2]

In 2021, Applicants sought and obtained various permits from the Township and approval from Farmland Preservation for a residential dwelling and a pole barn to be constructed on a portion of the Property abutting the private alley. RR at 49a. Objector appealed from the grant of the Township permits, asserting that

___

[2] This evidence suggests that, in common parlance, the road in question might be better described as a farm road than an alley. *See* RR at 161a (describing the alley as "a gravel farm road that is under constant maintenance just to be passable for . . . private vehicles and tractors and. . . trucks . . ."). We use the term "alley" here because it is a defined term in the Township's zoning ordinance that applies to the road in question, as set forth in the discussion section below.

the Township's zoning ordinance forbids the use of an alley as the sole or primary access to a property's primary structure. *Id.* at 10a & 177a; TWP. OF UPPER MOUNT BETHEL, PA., CODE OF ORDINANCES, art. IV, ch. 350 (Zoning Ordinance), § 350-26B & C (2004). After a hearing, the Board issued a decision sustaining Objector's appeal. RR at 97a & 233a-73a. Applicants did not appeal the Board's decision.

In 2022, Applicants applied for and were granted a driveway permit to construct a driveway adjoining Sagen Drive. RR at 48a, 57a, 93a-94a, 103a-05a & 157a-58a. However, Applicants did not seek approval from Farmland Preservation for an alternate location of their residence and pole barn along Sagen Drive. *Id.* at 149a; *see also id.* at 123a-24a. Instead, in 2023, they filed an application for a variance from the Township's ordinance to allow them to construct the residence and pole barn on the previously chosen spot, where their sole driveway access would be from the alley, as that part of the Property has no frontage on a public road. *Id.* at 10a, 59a-60a, 67a, 110a & 262a.

The Board held a hearing on the variance application. *See* RR at 21a-213a. The entirety of the record evidence that can possibly be construed as relating to any potential hardship to Applicants from denial of the variance consists of testimony by Ruth Ross that Applicants "didn't want to break up" the portion of the farmland along Sagen Drive, *id.* at 99a, and a supplemental letter from Maria Bentzoni on behalf of Farmland Preservation (Bentzoni) indicating that Applicants' chosen construction location was "the most efficient area" on the Property. *Id.* at 130a. However, on cross-examination, Bentzoni explained that by describing the location as "efficient," she might have been "overstepping" and was referring to the possibility that the contours of the land along Sagen Drive might create problems

3

with "percing" for placement of Applicants' septic system.[3]   *Id.* at 145a-46a. Moreover, Farmland Preservation had already approved the location without the additional review that prompted the letter, stating as the only consideration that "the location and the area of disturbance [would] be within the two acre size which is within the threshold established . . . ."[4]   *Id.* at 129a-30a.   Notably, Bentzoni acknowledged that Farmland Preservation requires any construction on property subject to a preservation easement to comply with zoning restrictions and that she was not aware that Applicants' chosen location for constructing their house would not comply with the Zoning Ordinance's road frontage requirement, nor that a driveway permit had been issued for access from Sagen Drive. *Id.* at 147a-48a, 150a & 218a.   In addition, Bentzoni acknowledged on cross-examination that she could not offer any reason why a location along Sagen Drive would not be approved by Farmland Preservation's board:

> Q      If [Applicants] came to you with a driveway permit and a septic permit . . . and asked you for the two acre exemption, curtilage, for a residential structure off of

---

[3] A percolation or "perc" test measures soil drainage rate to determine suitability for placement of a private septic system.  *See* 25 Pa. Code § 71.62.  Drainage requirements for septic systems are subject to specific calculations and are regulated by the Pennsylvania Department of Environmental Protection and local agencies – not Farmland Preservation; hence Bentzoni's acknowledgment that she was overstepping by speculating about percolation issues.  *See* 25 Pa. Code § 73.15.

[4] The letter also observed that, in discussions with the prior owner of the Property, Farmland Preservation had previous concerns about potential "difficulty" obtaining sufficient sight distance to allow driveway placement on Sagen Drive.  RR at 130a.  However, any such professed concern is negated by the undisputed fact that the Township issued a driveway permit to Applicants for a driveway on Sagen Drive.  In any event, sight distance requirements for driveway placement on Township roads are regulated by the Township – again, not by Farmland Preservation.  *See* Zoning Ordinance, § 291-13D(2).  The record is bare of any indication of authority on the part of Farmland Preservation to involve itself in determining whether a proposed driveway location has sufficient sight distance.

Sagen in this location, under your rules and regulations would the board have refused that application?

A      It would have to be considered.

Q      But do you know of any reason why the board -- factual basis for the board to have a reason to reject that application?

A      At this time, no.  I can't speak to that.  That wasn't what was submitted.

*Id.* at 149a.  Thus, Applicants presented *no evidence* that they could not build their house and pole barn adjacent to Sagen Drive and thereby comply with the Township's Zoning Ordinance.  They simply never sought to do so.

At the close of the hearing, the Board deliberated publicly.  RR 203a-12a.  In the deliberations, there were mentions of "a hardship" to Applicants, which was, apparently, their inability to access their preferred house location except through the alley.[5]  *Id.* at 205a-10a.  There was a single reference to the issue of whether the hardship was "reasonable" but no discussion of that issue.  *Id.* at 209a.  Following the public deliberations, the Board's members voted unanimously to grant the requested variance.  *Id.* at 212a.  In its subsequent written opinion, the Board recognized Applicants' burden to "establish the effect of the [Z]oning Ordinance is to burden the [P]roperty with an unnecessary hardship that is unique or peculiar to Applicants['] [P]roperty . . . ."  *Id.* at 253a.  The Board acknowledged that the Property has frontage on Sagen Drive and that Applicants obtained a driveway

---

[5]  The only other mentions of any "hardship" were suggestions that there was no hardship *to Objector* because she could still access her farmland using the alley and that there was no harm to her because she might get paid more for an agricultural preservation easement on her own property because of its location adjacent to Applicants' land, which was already under such an easement.  RR at 208a.

permit in 2022 to construct a driveway with access to Sagen Drive. *Id.* at 256a. The Board also referred to Bentzoni's testimony, which

> indicated the parameters for residential construction are *provided it meets municipal zoning*, allows for the landowner, a full-time farmhand or a family member, and to construct on no more than (2) two acres of disturbance which must include the access, the land around the curtilage or the homesite, and any ancillary or outbuildings and the well, septic, primary and secondary must all be contained in that two (2) . . . acres.

*Id.* at 257a & 266a (emphasis added). The Board quoted Bentzoni's testimony regarding percolation test and drainage problems she believed could arise from the contours of the land along Sagen Drive if Applicants built their house there. *Id.* at 258a. However, those issues were not listed by Bentzoni among the parameters applied by Farmland Preservation in considering an application to build on a property subject to a preservation easement. Notably, the Board did not point to *any* record evidence that Farmland Preservation would not have approved a building site fronting on Sagen Drive if Applicants had sought such approval.

Objector appealed to Common Pleas, which affirmed the Board's decision without accepting additional evidence. RR at 214a-32a. Objector's appeal to this Court followed.

## II. Issues

On appeal, Objector presents two issues for review by this Court. First, Objector asserts that Common Pleas erred[6] by applying a relaxed hardship standard

---

[6] Notwithstanding Objector's assertion of errors by Common Pleas, and as noted above, because Common Pleas took no additional evidence, this Court's review focuses on whether the Board, not Common Pleas, abused its discretion by issuing a decision not supported by substantial

6

applicable to dimensional variances and ignoring the requisite hardship standards set forth in both the Township's zoning ordinance and the Pennsylvania Municipalities Planning Code (MPC).[7] Second, Objector posits that Common Pleas abused its discretion in finding that there was substantial evidence to support the Board's finding of hardship. Because the two issues are interdependent, we address them together.

### III. Discussion

Section 350-26 of the Zoning Ordinance provides, in pertinent part, that "[n]o principal structure shall be erected on any portion of a lot which does not have primary access from an improved public street . . ." and similarly, that "no principal

---

evidence. *See 1825 Rt. 309*, 309 A.3d at 190 n.2 (citing *Artisan Constr. Grp.*, 275 A.3d at 84 n.5). As this Court has explained:

> Regardless of whether [c]ommon [p]leas may have exceeded its scope of review, we are mindful of our role in this matter. Our role, here, given that [c]ommon [p]leas did not take additional evidence in the zoning appeal, is limited to reviewing the [zoning hearing board] decision, not that of [c]ommon [p]leas. In other words, we will consider whether [the zoning hearing board – not [c]ommon [p]leas – erred as a matter of law or abused its discretion. Thus, we do not need to consider whether [c]ommon [p]leas exceeded its scope of review . . . . Nor do we have to consider whether such error, if it occurred, constitutes harmless error. Instead, we will consider the issues now before this Court in the context of the [zoning hearing board's] decision – not the decision of [c]ommon [p]leas.

*Conshohocken Borough v. Conshohocken Borough Zoning Hearing Bd.*, 261 A.3d 582, 593-94 (Pa. Cmwlth. 2021) (first quoting *Dowds v. Zoning Bd. of Adjustment*, 242 A.3d 683, 695 (Pa. Cmwlth. 2020) (additional quotation marks omitted); and then citing *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 148 n.1 (Pa. Cmwlth. 2011)). Likewise, here, we review the Board's decision, not that of Common Pleas.

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

structure shall derive its primary or only access from an alley." Zoning Ordinance, § 350-26B & C. Section 350-9 defines an "alley" as "[a] public or private way affording only secondary means of access to abutting property, or a public thoroughfare having a right-of-way width of less than 33 feet. . . ." *Id.*, § 350-9.

The Zoning Ordinance also sets forth specific requirements for variances, providing, in pertinent part, as follows:

A. Board may authorize variances. The Zoning Hearing Board shall hear requests for variances where it is alleged that the provisions of this chapter inflict unnecessary hardship upon the applicant. The Board may grant a variance provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant;

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent

8

property, nor be detrimental to the public welfare; and

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

B. In granting any variance, the Board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this chapter.

Zoning Ordinance, § 350-41A & B. The Zoning Ordinance closely tracks the language concerning variances in Section 910.2 of the MPC, which provides:

(a) The board shall hear requests for variances where it is alleged that the provisions of the zoning ordinance inflict unnecessary hardship upon the applicant. The board may by rule prescribe the form of application and may require preliminary application to the zoning officer. The board may grant a variance, provided that all of the following findings are made where relevant in a given case:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created by the appellant.

9

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

(b) In granting any variance, the board may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this act and the zoning ordinance.

53 P.S. § 10910.2.[8]  In this appeal, the parties' focus is on the hardship criterion of the variance requirements.

In *Hertzberg v. Zoning Board of Adjustment of Pittsburgh*, 721 A.2d 43 (Pa. 1998), our Supreme Court distinguished between use variances and dimensional variances regarding the evidence required to show unreasonable hardship, reasoning:

This Court has previously held in the context of use variances that unnecessary hardship is established by evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance. [*Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of Pittsburgh*, 689 A.2d 225, 227 (Pa. 1997)].

The issue here involves a dimensional variance and not a use variance – an important distinction . . . . When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner

_____
[8] Added by the Act of December 21, 1988, P.L. 1329.

10

> consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Hertzberg*, 721 A.2d at 47. Our Supreme Court held in *Hertzberg* that the burden of proof may be relaxed in a dimensional variance case to the extent that the applicant need not prove that the property has no value for any purpose without the requested variance; rather, "courts may consider multiple factors, including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." *Id.* at 50.

Here, Common Pleas applied the more relaxed dimensional variance standard, reasoning that the variance Applicants are seeking is not strictly either a dimensional or a use variance but is more closely analogous to a dimensional variance. Objector maintains that Common Pleas should not have applied the more relaxed *Hertzberg* standard regarding dimensional variances in assessing whether Applicants had shown the requisite hardship to obtain variance relief. Objector suggests that Applicants' choice to locate their residence in a spot requiring access through an alley is not a dimensional issue for purposes of hardship analysis. However, we need not reach this issue, as we conclude that the record fails to contain substantial evidence to meet even the relaxed standard for proof of unnecessary hardship applicable to dimensional variances.

In *Kneebone v. Zoning Hearing Board of Plainfield*, 273 A.3d 553 (Pa. 2022) (*Kneebone II*),[9] our Supreme Court affirmed this Court's reversal of a zoning

---

[9] Our Supreme Court issued two decisions in *Kneebone v. Zoning Hearing Board of Plainfield*, 273 A.3d 553 (Pa. 2022), both issued on the same day and with the same West citation.

11

decision granting a dimensional variance where the record lacked substantial evidence of an unnecessary hardship. In discussing *Hertzberg*, our Supreme Court explained that the only evidence of hardship was the homeowners' desire to add both an addition and a covered deck on the back of their home, which did not constitute the kind of hardship necessary to support a dimensional variance of the applicable setback requirement; rather, "to give meaning to the statutory language appearing in the MPC, property owners must make some showing beyond that their proposed use is reasonable and they cannot build according to their preferences without violating the zoning law." *Kneebone II*, 273 A.3d at 568-69. Even in light of the relaxed hardship standard applicable to dimensional variances under *Hertzberg*, the *Kneebone* Court held that "there must still be *some* evidence of hardship, and we believe it would stretch the concept of relaxation beyond the breaking point to affirm such a finding [of the zoning hearing board] on the present record." *Id.* at 571; *see also id.* at 567 (holding that this Court applied the proper standard in its review, where we did not seek to displace any of the zoning hearing board's credibility determinations or resolve conflicting evidence, as our analysis "pertained to whether substantial evidence supported the [b]oard's findings, which was well within [our] appellate standard").

---

One decision, designated here as *Kneebone I*, was issued without an opinion and can be found at 2022 Pa. LEXIS 509 (Pa., No. 52 MAP 2021, filed Apr. 28, 2022). The other, a supplemental written opinion, designated here as *Kneebone II*, can be found at 2022 Pa. LEXIS 504 (Pa., No. 52 MAP 2021, filed Apr. 28, 2022). Our Supreme Court was evenly divided in *Kneebone*; the result was affirmance of this Court's decision by operation of law. *Kneebone I*. However, no precedential value is attributed to that affirmance. *See Windisch v. Babcock & Wilcox Co.*, 195 A.2d 369 (Pa. 1963) (*per curiam*); *Tri-Cnty. Landfill, Inc. v. Pine Twp. Zoning Hearing Bd.*, 83 A.3d 488, 513 (Pa. Cmwlth. 2014) (explaining that "where the Supreme Court is divided evenly, its opinion lacks precedential value, although it has persuasive value").

Here, like the applicants in *Kneebone II*, Applicants presented no hardship evidence other than that "their proposed use is reasonable and they cannot build according to their preferences without violating the zoning law." *Kneebone II*, 273 A.3d at 568-69. The Property contains some 31 acres of land, including several hundred feet of frontage along Sagen Drive. RR at 82a-83a. Although the Farmland Preservation easement unquestionably imposes some burden on the entire Property, it allows up to two acres to be used for construction of a residential structure with outbuildings, curtilage, and driveway access. *Id.* at 67a, 74a, 121a-22a, 128a & 134a. Applicants offered *no* evidence that they could not build a residence on the Property with access from Sagen Drive. To the contrary, as set forth above, the undisputed evidence demonstrated that Applicants obtained a driveway permit for access to the Property from Sagen Drive. *Id.* at 48a, 57a, 93a-94a, 103a-05a & 157a-158a.

Further, there was *no* evidence that Farmland Preservation would not approve construction of Applicants' residence in a location with access from Sagen Drive. RR at 149a. Bentzoni confirmed that Applicants *did not apply* to Farmland Preservation for permission to build their residence with access from Sagen Drive. *Id.* at 123a-24a & 149a. In fact, Bentzoni was not even aware that a driveway permit had been issued for access from Sagen Drive. *Id.* at 148a. Thus, Applicants presented *no* evidence that building along Sagen Drive would result in *any* hardship to them, much less hardship sufficient to support a variance, even under the relaxed standard applicable to dimensional variances. At most, Ruth Ross testified that Applicants did not "want" to disturb the farmland along Sagen Drive, stating "[i]t's considered a field that's used for farming and we didn't want to break up that farm."

13

*Id.* at 99a. This evidence was facially inadequate to establish an unnecessary hardship.

Moreover, the entire Property is undisputedly farmland. RR at 99a-101a. Thus, some disturbance to the farm would inevitably occur, no matter where Applicants located their two-acre curtilage. Applicants offered *no* evidence that the hardship to them, if any, from any such disturbance would be greater if they located their residence along Sagen Drive.[10] Although Bentzoni speculated that Applicants' chosen location was the most "efficient" in relation to farming contours and percolation testing for a septic system, she did not point to any requirement of either the easement agreement or the governing law that required Applicants to choose the location for their residence that Farmland Preservation deemed most "efficient" for the remaining farmland or that authorized Farmland Preservation to make a judgment call about the best location for a residential septic system. *See id.* at 130a & 145a-46a; *see also* discussion *supra* at 3-4 & nn. 3 & 4.

We also observe that Applicants have failed to provide any evidence that their purported hardship is not self-created, which is an independent requirement for a variance as to which Applicants bear the burden in addition to establishing an

---

[10] We note that Objector, who has extensive education and training in farming and soil types, and who farmed the Property until 2019, offered undisputed testimony that the soils on the part of the Property along Sagen Road are classified by the United States Department of Agriculture as "not prime farmland"; they are rocky and not of high quality and result in "slightly barren" spots and low crop yield in that area, while the area in which Applicants want to build has some the highest quality soil on the Property and consistently provides some of the best crop yields. RR at 158a-560a & 169a-71a. Bentzoni, when asked about comparative soil quality and crop yields between Applicants' chosen location and the area along Sagen Drive, responded that she is "not a production specialist" and does not "deal with yields." *Id.* at 141a-42a. We acknowledge that it is not our function to weigh that testimony or assess its credibility, and we do not do so here. We observe, however, that the Board accepted Bentzoni as an expert only "in Farmland Preservation" (not in farm production or yields). *Id.* at 265a. In short, there was *no* evidence that the soil quality is better along Sagen Drive than in Applicants' chosen building location.

14

unnecessary hardship. *See Kneebone II*, 273 A.3d at 571-72 (citing Section 910.2(a)(3) of the MPC, 53 P.S. § 10910.2(a)(3)) (additional citations omitted). As this Court has explained, "[t]he burden of zoning compliance is on the landowner; his failure to determine the zoning requirements applicable to the construction of a building on his property cannot be the basis for establishing an unnecessary hardship" because it is "a situation of [his] own making." *Doris Terry Revocable Living Trust v. Zoning Bd. of Adjustment*, 873 A.2d 57, 64 (Pa. Cmwlth. 2005). Here, Applicants requested Farmland Preservation approval to construct their house in a location that was not permitted under the Zoning Ordinance because it had no direct access to a public road, although it was their legal responsibility to determine that their proposed construction would comply with zoning requirements. *See id.* Thus, they created any resulting hardship. *Id.*

Moreover, in 2022, after learning that the Zoning Ordinance required direct public road access, and even though they had already been granted a permit for driveway access from Sagen Drive, Applicants chose to seek a variance without even applying to Farmland Preservation to see whether a location along Sagen Drive would be approved. By doing so, they exacerbated the self-created nature of any hardship and further undermined their ability to demonstrate the requisite unnecessary hardship to obtain variance relief. Notably, although there is some evidence that Applicants' 2022 driveway permit may have expired, there was no evidence that another would not be available; moreover, by electing to pursue construction at another location rather than pursuing driveway and residential construction at a location along Sagen Road, Applicants themselves created any potential hardship that might arise from the expiration of the driveway permit.

15

As noted above, it is the function of the Board, not this Court, to weigh the evidence. Here, however, there was no evidence to weigh. The record simply contains *no* evidence, much less substantial evidence, of unnecessary hardship to Applicants from the Zoning Ordinance's requirement that they locate their residence with direct access to a public road.[11] Therefore, we conclude that the Board abused its discretion in granting the variance requested by Applicants. *Accord Kneebone II*, 273 A.3d at 567 (holding that this Court properly found a lack of substantial evidence and did not engage in improper weighing of evidence, where we did not displace credibility findings or weigh conflicting evidence).

## IV. Conclusion

Based on the foregoing discussion, we reverse Common Pleas' decision and remand with a directive to reverse the Board's decision and remand to the Board for a denial of Applicants' variance request.

_____

CHRISTINE FIZZANO CANNON, Judge

---

[11] Cross-examination at the hearing hinted that Objector may have had a retaliatory motive in protesting Applicants' chosen location, as she testified that she had farmed the Property until Applicants purchased it but that they would not allow her to continue farming it thereafter. *See* RR at 181a. However, the motive behind an objection to a variance request has no relevance to the applicant's entitlement to variance relief. *Accord Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 536 (Pa. Cmwlth. 2018) (noting zoning hearing board's finding of fact that the objector's motive was concern that the proposed construction for which a variance was sought would create competition with objector; giving no indication, however, that the objector's motive was considered in the decision either of the zoning hearing board or of this Court on review).

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Sarah Gately-Wilson, : 
               Appellant : 
                : 
            v. : 
                : 
Upper Mount Bethel Township Zoning : 
Hearing Board, John Ross, and Ruth :    No. 872 C.D. 2024
Ross : 

# **O R D E R**

AND NOW, this 1st day of May, 2025, the June 12, 2024 order of the Court of Common Pleas of Northampton County (Common Pleas) is REVERSED. This matter is REMANDED to Common Pleas. Common Pleas is directed, on remand, to reverse the decision of the Upper Mount Bethel Township Zoning Hearing Board (Board) and remand the matter to the Board to deny the variance request of John Ross and Ruth Ross.

        Jurisdiction is relinquished.

 

                                    _____
                                    CHRISTINE FIZZANO CANNON, Judge