IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In re: Appeal of Judy Berkman and Michelle Conners and Chestnut Hill Conservancy | : : : : |
| From Decision of City of Philadelphia Zoning Board of Adjustment and Ganos, LLC | : : : |
| | : No. 113 C.D. 2023 |
| Appeal of: Ganos, LLC | : Submitted: November 7, 2024 |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE STACY WALLACE, Judge
                    HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT         FILED: May 15, 2025

        Ganos, LLC (Landowner) appeals an order of the Court of Common Pleas of Philadelphia County (trial court) granting the land use appeal of Judy Berkman, Michelle Conners, and the Chestnut Hill Conservancy[1] (collectively, Objectors). In doing so, the trial court reversed the decision of the Philadelphia Zoning Board of Adjustment (Zoning Board) to grant a dimensional variance to allow Landowner to reduce the minimum frontage on one of the two lots it proposed to create out of its parcel. The question on appeal is whether the historic designation of Landowner's existing house, which restricts its demolition, imposed an unnecessary hardship upon Landowner's right to subdivide its property. Concluding that the trial court erred, we reverse.

---

[1] The Chestnut Hill Conservancy intervened in the land use appeal filed by Berkman and Conners from the Philadelphia Zoning Board of Adjustment's decision. *See* Original Record (O.R.), Item No. 7.

**Background**

Landowner owns a property approximately one-half acre in size located at 540 West Moreland Avenue in the City of Philadelphia (City). Landowner's property was formerly part of the five-acre Keewaydin Estate located in the Chestnut Hill neighborhood of the City. Thereon, a main house and two flanking, detached wings were constructed of stone between 1889 and 1912 in the Dutch Colonial Revival style. In 1948, the Keewaydin Estate was subdivided into multiple parcels, with the main house and the two detached wings each placed on separate lots.[2]

On March 12, 2019, Landowner purchased the lot that included the west wing of the former Keewaydin Estate (West Wing), a garage, and adjoining land. On March 21, 2019, the Chestnut Hill Conservancy nominated the main house and two wings of the former Keewaydin Estate for inclusion on the City's Register of Historic Places. After public hearings, the City's Historical Commission designated Landowner's property as historic.

Thereafter, Landowner applied to the Philadelphia Department of Licenses and Inspections (L&I) for a zoning permit for a proposed "relocation of lot lines to create two (2) lots (Parcel B and Parcel C)," with Parcel B continuing its existing single-family residential use. Reproduced Record at 137 (R.R. __).[3] The garage would be demolished so that Parcel C would be a vacant lot. *Id.* Parcel B would be 11,536 square feet in size, and Parcel C would be 13,777 square feet in

---

[2] The main house fronts Cherokee Street, the east wing fronts Mermaid Avenue and the west wing fronts West Moreland Avenue.

[3] Pennsylvania Rule of Appellate Procedure 2173 requires that the reproduced record be numbered in Arabic figures followed by a small "a." Pa.R.A.P. 2173. The reproduced record does not comply with Rule 2173 because it only utilizes Arabic figures. For convenience, we cite to each page as paginated by Landowner.

size.  Each proposed parcel would exceed the minimum square footage for lots in the relevant zoning district.  A schematic of the proposal follows:



Objectors Brief at 4; *see also* R.R. 134.

On February 26, 2021, L&I denied the application for the stated reason that the zoning district requires a frontage width of 75 feet, whereas Landowner proposed a frontage width for Parcel B of 15 feet.  As such, the subdivision would create a "flag lot."  R.R. 137.  The Notice of Refusal stated that Landowner's proposed subdivision could not be done without a dimensional variance.

Landowner timely appealed L&I's denial to the Zoning Board and requested a variance.  On August 4, 2021, the Zoning Board conducted a virtual hearing by Zoom.

3

The hearing began with a statement on behalf of Landowner by its attorney, Vern Anastasio, Esquire. He explained that Landowner sought to "relocate some lot lines . . . [and they were] not proposing anything else but that." Notes of Testimony, 8/4/2021, at 3 (N.T. __); R.R. 30. He further stated that "a unique condition on this lot [] prevents [Landowner] from doing this as a matter of right" because the West Wing "has been designated by the Historical Commission for historical protection," which restricts alterations to its structure. N.T. 3-4; R.R. 30-31. Anastasio stated the historic designation was sought by the Chestnut Hill Conservancy after Landowner had "closed on the property," and "[s]o the hardship, the unique condition exists not by the hand of [his] client[.]" N.T. 4; R.R. 31. Absent the historic designation, Landowner could have "cut [the lot] right down the middle as a matter of right." *Id*. The prohibition on demolition of the designated structure, however, precluded this subdivision permitted by right.

Anastasio noted that Landowner had met with the Chestnut Hill Conservancy, the Registered Community Organization (RCO) for the area, "on four separate occasions" despite the proposal being just a "relocation of lot lines." N.T. 4; R.R. 31. Referring to a letter of opposition submitted by the Chestnut Hill Conservancy, Anastasio stated as follows:

> I think their letter of opposition really leaned on the fact that they want to know what is going to go on this other lot[, *i.e.*, Parcel C]. Well, we don't have a plan for that yet, and my client didn't want to invest in coming up with plans until he could actually get the subdivision.

N.T. 4-5; R.R. 31-32. Anastasio observed that any future improvement to Parcel C would require a development plan in which the Chestnut Hill Conservancy, as the RCO, would have full involvement.

4

Landowner then called David Jacobs, its principal, to testify. Jacobs confirmed the truth and accuracy of Anastasio's opening statements. Landowner's counsel then argued that no additional evidence was required because relocating the lot lines was an abstract exercise that affected City lot records but nothing else. Anastasio explained:

> [R]elocating these lot lines won't cause congestion in the neighborhood. It won't impact light or air for neighbors. It will not burden the infrastructure. It won't otherwise have any impact at all, zero impact on this community by relocating lot lines.

N.T. 6; R.R. 33.

Darin Steinberg, Esquire, counsel for three near neighbors who opposed the variance, made a statement on their behalf. He stated that Anastasio had "participated" on behalf of Landowner in the Historical Commission process and did not voice an objection to the historic designation of Landowner's property. N.T. 9; R.R. 36. Steinberg further advised that there was no financial need for the variance because Landowner would be able "to recoup its investment and then some as a single[-]family home on a single[-]family lot." N.T. 11; R.R. 38. Steinberg stated that the existing sewer line could not take an additional attachment.

Don Ratchford, a near neighbor and owner of another wing of the former Keewaydin Estate, adopted Steinberg's opening statement as his own testimony. Ratchford also testified that Walter Sommers, another near neighbor, believed that the existing private sewer line could not "handle another home[]" and a subdivision "would diminish the view shed and would be out of place with the rest of the residents [sic] on the street." N.T. 22-23; R.R. 49-50. Landowner lodged a hearsay and relevancy objection that was sustained.

5

Lori Salganicoff, Executive Director of the Chestnut Hill Conservancy, requested the Zoning Board to deny the variance because it would allow the creation of a new developable lot and place the West Wing on a flag lot. When she continued to speak on the consequences of the future development of the proposed lots, Landowner objected to the testimony as speculation. The Chairman of the Zoning Board sustained the objection, stating that it is "all kind of conjecture or hearsay." N.T. 33; R.R. 60. The Chairman further admonished any witnesses not to speculate on "what may or may not get built in the future, because none of [them have] a crystal ball." *Id.*

Judy Berkman and Ron Eisenberg, other nearby neighbors, testified in opposition to the proposed subdivision of Landowner's property. Eisenberg, who owns a parcel that was formerly part of the Keewaydin Estate, asserted that the mere subdivision will change "the value of [his] property" in the absence of a full explanation from Landowner on its plans for the new lot. N.T. 36; R.R. 63. Landowner objected to the relevancy of this testimony and to the competence of Eisenberg, who is not a realtor, to opine on how a new lot line would impact the value of his property. The objection was sustained.

Charles Richardson spoke on behalf of Councilwoman Cindy Bass, who opposed the variance. Richardson stated that "the relocation of lot lines will at some point have some future ramifications on the neighborhood[.]" N.T. 39; R.R. 66.

John Landis, "co-chair of the Development Review Committee of the Chestnut Hill Community Association, the designated coordinating RCO[,]" testified that "all three of our review committees" found Landowner's case "to be incomplete and unpersuasive[]" regarding how it plans to use the proposed lots. N.T.

6

40-41; R.R. 67-68. Further, Landis stated that Landowner did not explain why a flag lot was proposed. He stated that the Chestnut Hill Community Association sought "to determine whether any proposed development project will create an adverse and unmitigated physical and economic or aesthetic impact on the neighbors and the community." N.T. 42; R.R. 69. The Chairman of the Zoning Board sustained Landowner's objection to this testimony as speculation.

Michelle Conners, a near neighbor, testified about past proposals for the West Wing, its maintenance challenges, and the circumstances under which Landowner acquired the property. Her testimony was cut short when the Chairman sustained Landowner's relevancy objection. N.T. 48; R.R. 75.

In rebuttal, Landowner called Ian Toner, "the architect who prepared the initial subdivision plan[,]" to testify in response to Objectors' suggestion that the requested dimensional variance was not the least variance necessary. N.T. 51; R.R. 78. Toner testified that he proposed a frontage of 75 feet for Lot B, which would conform to the Philadelphia Zoning Code (Zoning Code)[4] and create an L-shaped lot instead of a flag lot. However, the City's Planning Commission advised Toner that an L-shaped lot would be refused. Toner agreed with that decision, explaining that in his expert opinion "the proposed 15 [feet is] more consistent with a better streetscape flow[.]" N.T. 52; R.R. 79. By contrast, "an L-shaped lot would be an odd lot for a site like this, so a flag lot makes more sense in this situation." *Id*.

David Fecteau, representing the City's Planning Commission, noted that between 1950 and 1970 "four new lots have been created at the periphery of this estate . . . [and t]he current application is consistent with that pattern." N.T. 57; R.R.

---

[4] Phila., Pa., Zoning Code (2012).

84. He testified that the Planning Commission recommended that the Zoning Board grant the variance.

The Zoning Board received a letter dated July 29, 2021, from Anne McNiff, Executive Director of the Chestnut Hill Community Association, formally noting its opposition to the proposed variance.

## Zoning Board Decision

At the conclusion of the hearing, the Zoning Board voted unanimously to approve the variance. On June 8, 2022, the Zoning Board issued a written decision holding that Landowner "presented credible, persuasive evidence and testimony sufficient to establish that all [Zoning] Code criteria for grant of the requested dimensional variance were satisfied." Zoning Board Decision at 8, Conclusions of Law No. 8; R.R. 95. The decision explained that the location of the historic structure precluded subdivision of the existing oversized lot into two regularly shaped lots. The Zoning Board concluded the hardship "was not self-created" by Landowner because the historic designation took place after Landowner purchased the Property. *Id.*, Conclusions of Law No. 12; R.R. 95.

The Zoning Board entered the following relevant conclusions of law:

14. Additionally, with regard to the "minimum necessary" criterion, the Board found the expert opinions of architect Ian Toner, who testified that a by right configuration would not be approved by the Planning Commission and that the proposed flag lot was both consistent with a better streetscape flow and "[made] more sense in a situation like this," to be both credible and persuasive.

15. With regard to any impact on the public health, safety or general welfare, the Board notes that the nature of the proposal - i.e., a subdivision with no proposed construction, development or change in use – rules out any direct negative impacts on the public.

8

16. With regard to consistency with any adopted plan, the Board notes the Planning Commission recommended the requested variance be granted and described the proposal as consistent with a "pattern" of "new properties [that] have been created at the perimeter of this estate."

17. The Board notes that it found evidence presented by [O]bjectors to be neither credible nor persuasive. Additionally, to the extent [O]bjectors' testimony was determined not to be relevant, the Board concludes it acted properly, and within its authority, in excluding such testimony.

. . . .

21. In this matter regarding a dimensional variance, the [O]bjectors, despite repeated requests from the Board, focused on potential uses which might be done with the property rather than the actual dimensional request before the Board.

22. [O]bjectors' testimony "was speculative, at best, and, therefore, would not constitute competent evidence." *Siya Real Estate LLC* [*v. Allentown City Zoning Hearing Board*], 210 A.3d [1152,] 1161 [(Pa. Cmwlth. 2019)]. . . .

Zoning Board Decision at 8-10, Conclusions of Law Nos. 14-17, 21-22; R.R. 95-97.

Objectors appealed the Zoning Board's decision to the trial court.

### Trial Court Opinion and Order

The trial court did not receive new evidence on Objectors' appeal. It concluded that Landowner failed to prove an unnecessary hardship or that its proposed flag lot configuration constituted the minimum variance necessary. It further held that the Zoning Board erred in refusing to accept the relevant testimony proffered by Objectors. The trial court sustained Objectors' appeal and reversed the decision of the Zoning Board.

9

## Appeal

On appeal,[5] Landowner asserts its evidence established that the historic designation of the West Wing constituted a hardship, peculiar to its real property, that made it impossible to subdivide its property into two equal lots, to which it was entitled by right. Landowner did not create the hardship, and the variance was consistent with the City's plan and constituted the minimum relief necessary. It contends that the trial court erred in otherwise holding.

## Analysis

We begin with the applicable legislation. Section 14-303(8)(e)(.1) of the Zoning Code, entitled "Zoning Variances," states, in relevant part, as follows:

> The Zoning Board shall, in writing, set forth each required finding for each variance that is granted, set forth each finding that is not satisfied for each variance that is denied, *and to the extent that a specific finding is not relevant to the decision, shall so state* . . . . Each finding shall be supported by substantial evidence . . . . *The Zoning Board shall grant a variance only if it finds each of the following criteria are satisfied*:
>
> > (.a) *The denial of the variance would result in an unnecessary hardship*. The applicant shall demonstrate that the unnecessary hardship was not created by the applicant and that the criteria set forth in §14-303(8)(e)(.2) (Use Variances)

---

[5] Where the trial court does not take additional evidence, this Court reviews the decision of the zoning board. *Dowds v. Zoning Board of Adjustment*, 242 A.3d 683, 692 n.10 (Pa. Cmwlth. 2020) (citation omitted). We evaluate whether the zoning board committed an error of law, whether it violated the appellant's constitutional rights, whether it violated its practice and procedure, or whether its findings of fact were supported by substantial evidence. *See* 2 Pa. C.S. §754. In conducting a substantial evidence analysis, we examine whether the evidence supports the factfinder's factual findings; "it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the [factfinder]." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). On questions of law, "our standard of review is *de novo* and our scope of review is plenary." *Gorsline v. Board of Supervisors of Fairfield Township*, 186 A.3d 375, 385 (Pa. 2018).

below, in the case of use variances, or the criteria set forth in §14-303(8)(e)(.3) (Dimensional Variances) below, in the case of dimensional variances, have been satisfied;

(.b) *The variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue*;

(.c) The grant of the variance will be in harmony with the purpose and spirit of this Zoning Code;

(.d) The grant of the variance will not substantially increase congestion in the public streets, increase the danger of fire, or otherwise endanger the public health, safety, or general welfare;

(.e) The variance will not substantially or permanently injure the appropriate use of adjacent conforming property or impair an adequate supply of light and air to adjacent conforming property;

(.f) The grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

(.g) *The grant of the variance will not adversely and substantially affect the implementation of any adopted plan for the area where the property is located*; and

(.h) The grant of the variance will not create any significant environmental damage, pollution, erosion, or siltation, and will not significantly increase the danger of flooding either during or after construction, and the applicant will take measures to minimize environmental damage during any construction.

ZONING CODE §14-303(8)(e)(.1) (emphasis added). In sum, the grant or denial of a variance requires findings on the above-listed eight separate criteria, except where "a specific finding is not relevant to the decision[.]" *Id.*

The Zoning Code provides additional direction on the findings relevant to whether an applicant has shown an unnecessary hardship. It states, in relevant part, as follows:

(.2) Use Variances.

To find an unnecessary hardship in the case of a use variance, *the Zoning Board must make all of the following findings*:

(.a) That there are unique physical circumstances or conditions (such as irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions) *peculiar to the property*, and that the unnecessary hardship is due to such conditions and not to circumstances or conditions generally created by the provisions of this Zoning Code in the area or zoning district where the property is located;

(.b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with the provisions of this Zoning Code and that the authorization of a variance is therefore necessary to enable the viable economic use of the property;

(.c) That the use variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

12

> (.d) That the hardship cannot be cured by the grant of a dimensional variance.
>
> (.3) Dimensional Variances.
>
> To find an unnecessary hardship in the case of a dimensional variance, the *Zoning Board may consider the economic detriment* to the applicant if the variance is denied, *the financial burden* created by any work necessary to bring the building into strict compliance with the zoning requirements and the *characteristics of the surrounding neighborhood*.

ZONING CODE §14-303(8)(e)(.2)-(.3) (emphasis added). Essentially, an applicant seeking a variance pursuant to the Zoning Code must show: (1) the denial of the variance will result in an unnecessary hardship unique to the property; (2) the variance will not adversely impact the public interest; and (3) the variance is the minimum variance necessary to afford relief. *Liberties Lofts LLC v. Zoning Board of Adjustment*, 182 A.3d 513, 530 (Pa. Cmwlth. 2018).

The applicant for a variance bears the burden of proving that the application satisfies the zoning ordinance's requirements therefor. *See Schindler Elevator Corp. v. Department of Labor and Industry*, 303 A.3d 874, 882 (Pa. Cmwlth. 2023) (citation omitted). A dimensional variance seeks only an adjustment to the zoning regulations. Therefore, the "'quantum of proof' needed to establish "unnecessary hardship" for a dimensional variance is reduced because "the grant of a dimensional variance is of lesser moment than the grant of a use variance." *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 721 A.2d 43, 47-48 (Pa. 1998). A dimensional variance may be granted upon evidence of a financial hardship to bring the property "into strict compliance with the zoning requirements[.]" *Id*. at 50.

13

With these principles in mind, we turn to Landowner's appeal that the trial court erred because the Zoning Board's findings of fact are fully supported by substantial evidence and its legal conclusions are consistent with the Zoning Code's standards for the grant of a dimensional variance.

## I. Unnecessary Hardship

Landowner argues that the Zoning Board was correct in finding that Landowner demonstrated an unnecessary hardship that was not of Landowner's creation. The Historical Commission's designation requires preservation of the West Wing, which constitutes a unique condition peculiar to Landowner's property, *i.e.*, an encumbrance that runs with the land. Except for the historic designation, Landowner could have pursued a by-right subdivision of its oversized lot. The restriction was not one "common to the typical lot owner" and, thus, is an undue hardship. *Halberstadt v. Borough of Nazareth*, 687 A.2d 371, 373 (Pa. 1997) (rocks and slopes can constitute a unique condition of property notwithstanding the fact that other lots may also have rocks and slopes).

Objectors respond that the trial court correctly relied upon precedent to conclude that the "designation of a property as being historic does not provide a legal basis for the finding of unnecessary hardship relating to the land." Objectors Brief at 11. In any case, the historic designation of the property was a so-called hardship of Landowner's making because it did not oppose the designation when the matter was before the City's Historical Commission.

To obtain a dimensional variance, an applicant must show that unnecessary hardship will result if the variance is denied. The hardship must be unique to the property at issue, not a hardship arising from the impact of the zoning regulations on the entire district. *Marshall v. City of Philadelphia*, 97 A.3d 323, 329

14

(Pa. 2014). In determining whether hardship has been established for a dimensional variance, courts may consider the "economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[,] and the characteristics of the surrounding neighborhood." *Hertzberg*, 721 A.2d at 50.

In holding that Landowner failed to prove an unnecessary hardship, the trial court relied upon *Demko v. City of Pittsburgh Zoning Board of Adjustment*, 155 A.3d 1163 (Pa. Cmwlth. 2017), for the proposition that "preservation requirements" do not constitute a hardship that will warrant a variance. Trial Court Op., 1/11/2023, at 22. The trial court misapprehended our holding in *Demko*.

In *Demko*, the Redevelopment Authority of Pittsburgh (Redevelopment Authority) issued a request for proposals to preserve and rehabilitate certain buildings it owned. The winning bidder needed a variance "to preserve the Existing Buildings" in its redevelopment project. *Id*. at 1170. The zoning board approved the dimensional variances, "conclud[ing] that the historic Existing Buildings constitute a unique condition of the Property and that they should be preserved, and that the unique circumstances result in an unnecessary hardship justifying the requested dimensional [v]ariances." *Id*. at 1166.

It was the Redevelopment Authority, not the developer, that imposed the preservation requirement. The question was whether the imposition of the preservation requirement was required by statute. After review of the Redevelopment Authority's "enabling statute" and the "Urban Redevelopment Law,"[6] this Court concluded that the Redevelopment Authority's preservation requirement lacked any legal authority. *Demko*, 155 A.3d at 1170. To the contrary,

---

[6] Act of May 24, 1945, P.L. 991, *as amended*, 35 P.S. §§1701–1719.2.

15

the "district in which the [p]roperty [was] located contain[ed] no restrictions concerning historical or architectural protections." *Id*. at 1171. The preservation requirement imposed on the winning bidder was simply a preference of the Redevelopment Authority and, as such, self-imposed. Thus, there was no undue hardship shown.

Here, the historic designation of the West Wing was imposed by the City of Philadelphia pursuant to its Historic Preservation Ordinance, Zoning Code §§14-1001-14-1011. Unlike the applicant in *Demko*, Landowner showed that the restriction on Landowner's property was founded in legislation.

The trial court also cited *Rittenhouse Row v. Aspite*, 917 A.2d 880 (Pa. Cmwlth. 2006). There, the property owner sought to open a 7-Eleven convenience store in the Center City Overlay District, a zoning regulation intended to maintain the historic character of the district. After the owner's request for a use variance was denied, he challenged the zoning ordinance as unconstitutional. We rejected that challenge. We further held a land use restriction imposed by the zoning ordinance cannot constitute a hardship, unless the evidence demonstrates that compliance with the zoning ordinance renders "the property practically useless." *Id*. at 885.

*Rittenhouse* is also distinguishable. The land use restriction in *Rittenhouse* was imposed by the zoning ordinance. Here, the historic restriction on Landowner's property was not imposed by the Zoning Code but by the formal action of the Historical Commission. The restriction is not shared with an entire zoning district; it is peculiar to Landowner's parcel. Two other parcels are also designated as historic, but this does not affect the hardship analysis. An historic designation is not one "common to the typical lot owner." *Halberstadt*, 687 A.2d at 373. In short,

16

the restriction upon the West Wing's demolition is a condition peculiar to Landowner's property.

Objectors argue that an historic designation is not a hardship but an advantage. They cite no authority for this proposition. Landowner's right to subdivide its large lot has been curtailed by its historic designation. Otherwise, Landowner could demolish the West Wing and create two equal lots that meet the frontage requirements on West Moreland Avenue. The deprivation of Landowner's ability to do so constitutes an unnecessary hardship, as held by the Zoning Board.[7]

The Zoning Board also found that the hardship was not created by Landowner because the historic designation was not made until after Landowner bought its parcel. The trial court held otherwise, reasoning that by not voicing an objection to the Historical Commission, Landowner "tacitly agreed" to the designation. Trial Court Op., 1/11/2023, at 22. We disagree.

First, the proceeding before the Historical Commission was a quasi-legislative proceeding. *Turchi v. Philadelphia Board of License and Inspection Review*, 20 A.3d 586, 590 (Pa. Cmwlth. 2011). As such, the Historical Commission does not employ the procedures expected in a quasi-adjudicatory process. There was an opportunity for public comment, but no opportunity for intervention, cross-examination, or objection to the admission of materials related to the review of one application. Second, silence is ambiguous and can just as easily be construed a "tacit disapproval." Third, there are many reasons why Landowner may have chosen not to lodge an objection. Simply, it might have been futile, given the standards for a historic designation and the detailed materials offered in support of the nomination for historic designation submitted by the Chestnut Hill Conservancy.

---

[7] Landowner did not base its hardship upon financial burden but upon the configuration of the lot, the placement of the West Wing, and its right to create two lots out of its oversized lot.

17

The Zoning Code states that the applicant "shall demonstrate that the unnecessary hardship was *not created by the applicant*[.]" ZONING CODE §14-303(8)(e)(.1)(.a) (emphasis added). Creating a hardship requires initiative. *See*, *e.g.*, *Doris Terry Revocable Living Trust v. Zoning Board of City of Pittsburgh*, 873 A.2d 57 (Pa. Cmwlth. 2005) (landowner not entitled to variance for unlawful garage it constructed because hardship was of landowner's own making); *Appletree Land Development v. Zoning Board of York Township*, 834 A.2d 1214 (Pa. Cmwlth. 2003) (porch constructed in violation of setback requirement not entitled to variance because hardship was one of landowner's own making). The historic designation of Landowner's property was the initiative of the Chestnut Hill Conservancy, not Landowner.

The Zoning Board correctly held that the deprivation of Landowner's right to subdivide its lot constituted an unnecessary hardship that was not created by Landowner.

## II. Minimum Variance

The Zoning Board found the opinions of Ian Toner "credible and persuasive" that the flag lot would provide a better streetscape than would an L-shaped lot that conformed to the dimensional requirements in the Zoning Code. Zoning Board Decision at 8, Conclusions of Law No. 14; R.R. 95. The Zoning Board also found that the flag lot met the "minimum necessary" requirement for a variance because it complied "with Code requirements for lot size and [met] all other dimensional requirements save for lot width[.]" Zoning Board Decision at 8, Conclusions of Law No. 13; R.R. 95. In reversing the Zoning Board, the trial court held that to satisfy the minimum variance standard, Landowner "should have presented concrete data that 'unless the variances were granted, the applicants would

18

not have been able to make reasonable use of the property without financial burden.'" Trial Court Op. at 22 (quoting *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500, 508 (Pa. Cmwlth. 2018)). The trial court also cited *Metal Green, Inc. v. City of Philadelphia*, 266 A.3d 495 (Pa. 2021). These cases are inapposite.

The Zoning Code states that the Zoning Board "must" find that the "variance, whether use or dimensional, if authorized will represent the minimum variance that will afford relief and will represent the least modification possible of the use or dimensional regulation in issue." ZONING CODE §14-303(8)(e)(.1)(.b). This inquiry does not mandate the applicant to provide "concrete data" on the financial burden to the applicant were the variance to be denied, as supposed by the trial court. The Zoning Code states that the Zoning Board "*may consider* the economic detriment to the applicant" and the "financial burden" in the absence of a dimensional variance. ZONING CODE §14-303(8)(e)(.3) (emphasis added). However, the Zoning Code does not mandate a financial analysis in order for the applicant to demonstrate that the variance requested is the minimum variance required to provide relief. There is no "rigid principle" that a proposed variance, whether use or dimensional, is the minimum needed to generate a profit. *In re Bass*, 320 A.3d 892, 904 (Pa. Cmwlth. 2024).

Landowner showed that frontage of 15 feet was the minimum variance needed to allow it to create two lots. Strict conformance with the Zoning Code was unachievable because an L-shaped lot would be inconsistent with the Planning Commission's plans for the area and would not be approved.

19

The Zoning Board concluded that the variance was the minimum needed to provide relief and the least modification to the frontage requirement of 75 feet. It fully explained its rationale. We discern no error in this conclusion.

### III. Applicable Variance Standards

The trial court was critical of the Zoning Board's Chairman's refusal to hear "relevant evidence" from Objectors and of Landowner's failure to share with the "community organizations, concerned neighbors, and the [Zoning Board] any information whatsoever about its associated development plans[.]" Trial Court Op., 1/11/2023, at 24-25. The Zoning Board found Objectors' focus on Landowners' potential development irrelevant because the subdivision would have no impact on the current use of Landowner's property. In so finding, the Zoning Board credited Landowner's evidence that it had no plan for the development of Parcel C. The trial court erred in holding that Landowner had to identify a development plan as the condition to the creation of Lot C. No such requirement is stated in the Zoning Code.

The Zoning Code requires the Zoning Board to make "specific findings" on a variance application but only where "relevant to the decision." ZONING CODE §14-303(8)(e)(.1). Here, the variance application concerned a "subdivision with no proposed construction, development or change in use." Zoning Board Decision at 9, Conclusions of Law No. 15; R.R. 96. Accordingly, the Zoning Board did not take evidence on such factors as congestion, light and air, burden on sewer and water, and environmental damage. ZONING CODE §14-308(8)(e)(.1)(.d)-(.f), (.h). Rather, it confined its findings to hardship, minimum variance, and consistency with "any adopted plan for the area." ZONING CODE §14-308(8)(e)(.1)(.a)-(.c), (.g).

20

The Zoning Code did not require the Zoning Board to make findings on sewage capacity, for example, because the variance requested would not change the current use of Landowner's property. The Zoning Code does not require a finding on each of the eight specific criteria where a specific finding is not relevant. ZONING CODE §14-303(8)(e)(.1). Here, the Zoning Board specifically found that the "nature of the proposal - *i.e.*, a subdivision with no proposed construction, development or change in use - rules out any direct impacts on the public." Zoning Board Decision at 9, Conclusions of Law No. 15; R.R. 96. In short, the Zoning Board explained why its findings were limited to hardship, minimum variance, and public interest as it was required to do. *See* ZONING CODE §14-303(8)(e)(.1) (where Zoning Board finds a "specific finding is not relevant to the decision, [it] shall so state").

We discern no error in the Zoning Board's decision to refuse to hear Objectors' evidence. A proposal to create two lots is separate from a development plan. There is no requirement in the Zoning Code that ties them together. The trial court erred in otherwise holding. The Zoning Board had only to make findings on those variance factors relevant to new lot lines, which will have no impact on the existing use of the property. The Zoning Board made the findings necessary to the application before it.

## Conclusion

For the reasons set forth above, we reverse the trial court's order of January 11, 2023, which set aside the decision of the Philadelphia Zoning Board of Adjustment to grant a dimensional variance to Landowner.

_____
MARY HANNAH LEAVITT, President Judge Emerita

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Appeal of Judy Berkman and :
Michelle Conners and Chestnut Hill :
Conservancy :
 :
From Decision of City of Philadelphia :
Zoning Board of Adjustment and :
Ganos, LLC :
 :
Appeal of: Ganos, LLC : No. 113 C.D. 2023

## **O R D E R**

AND NOW, this 15th day of May, 2025, the January 11, 2023, order of the

Court of Common Pleas of Philadelphia County is REVERSED.

_____
MARY HANNAH LEAVITT, President Judge Emerita

In re: Appeal of Judy Berkman and  :
Michelle Conners and Chestnut Hill  :
Conservancy  :
  :
From Decision of City of Philadelphia  :
Zoning Board of Adjustment and  :
Ganos, LLC  :
  : No.  113 C.D. 2023
Appeal of: Ganos, LLC  : Submitted:  November 7, 2024


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE WALLACE                                    FILED:  May 15, 2025


I respectfully disagree with the Majority's conclusion the City of Philadelphia (City) Zoning Board of Adjustment (ZBA) did not err in granting a dimensional variance to Ganos, LLC (Landowner), thereby permitting Landowner to subdivide its property located at 540 West Moreland Avenue, Philadelphia (the Property) into 2 lots, with one having only 15 feet of street frontage despite the zoning district's requirement of 75 feet of street frontage.  Based on the evidence presented, I would conclude Landowner failed to establish the necessary criteria for a variance for three reasons.  First, I believe the ZBA erred in determining Landowner did not need to present evidence concerning four of the eight variance criteria, and further erred in

determining Landowner carried its burden of proof on those four criteria. Second, I believe the ZBA erred in determining Landowner did not create the hardship for which it now seeks relief. Finally, I believe the ZBA erred in determining Landowner's variance was the minimum variance necessary to afford relief. Due to these deficiencies, I would affirm the decision of the Court of Common Pleas of Philadelphia County (Common Pleas) which reversed the ZBA's decision.

## A. Health and Safety Related Variance Criteria

My first disagreement with the Majority is its belief the ZBA correctly concluded Landowner did not need to establish the four variance criteria set forth in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h)[1] of the City's Zoning Code[2] (Zoning Code). *See In re: Appeal of Judy Berkman* (Pa. Cmwlth., No. 113 C.D. 2023, filed May 15, 2025), slip op. at 10-12, 20. These four criteria focus on various aspects of public health and safety. The ZBA essentially dismissed these four criteria in its Conclusions of Law No. 11 ("the [ZBA] concludes the remaining variance criteria are also satisfied") and No. 15 ("With regard to any impact on the public health, safety or general welfare, the [ZBA] notes that the nature of the proposal – i.e., a subdivision with no proposed construction, development or change in use – rules out any direct negative impacts on the public."). R.R. at 95, 96.

Although Landowner was not proposing any immediate construction, Landowner conceded it would, by right, be able to place a single-family residence on its proposed second lot. *Id.* at 34. The ZBA Chairman also acknowledged Landowner would not be required to seek ZBA approval if it built a single-family residence on the newly subdivided lot. *Id.* Thus, both Landowner and the ZBA

---

[1] The Majority Opinion quotes the Zoning Code's variance criteria at length, so I will not repeat those provisions here. *See In re: Appeal of Judy Berkman*, slip op. at 10-13.
[2] City of Phila., Pa., Zoning Code (2012), *as amended*.

Chairman acknowledged the reality of this situation: the Property currently contains one single-family residence, but after Landowner's subdivision, the Property could contain two single-family residences without any further ZBA involvement.

Because these proceedings were the ZBA's only opportunity to evaluate the potential impacts of an additional, by-right, single-family residence on the Property, those potential impacts are highly relevant now. Those impacts are exactly what Section 14-303(8)(e)(.1)(.d)-(.f) and (.h) requires the ZBA to evaluate. Despite the relevance of the impacts of a by-right addition to the newly created lot, the ZBA Chairman repeatedly prevented testimony related to future impacts of development as irrelevant or speculative. R.R. at 48, 58, 70, 75, 77. This was improper. While I concede the impacts of future developments that are not by right, such as a multi-family dwelling, a commercial structure, a skyscraper, etc., would be speculative, Landowner's ability to construct a single-family residence on the new lot is certain. As a result, I believe the ZBA erred in concluding Landowner's subdivision did not implicate the four variance criteria in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h) of the Zoning Code.

Next, Landowner did not present any competent evidence relating to the four criteria set forth in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h) of the Zoning Code. At the ZBA's hearing, Landowner's counsel began by making statements which were later adopted by the testimony of Landowner's representative, David Jacobs (Jacobs). *See* R.R. at 29-33. While these comments touched on some of Section 14-303(8)(e)(.1) variance criteria, they did not address the four criteria in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h). *Id.* After Jacobs concluded his brief testimony,

Landowner's counsel continued to present argument; however, no witness ever adopted Landowner's counsel's **further** statements.[3] *See id.* at 33-85.

Although the ZBA placed Landowner's counsel under oath, *id.* at 29, Landowner's counsel's comments were neither testimony nor evidence. *See Dep't of Transp., Bureau of Driver Licensing v. Kappas*, 621 A.2d 1204, 1207 (Pa. Cmwlth. 1993) ("Statements made by a party's counsel do not constitute evidence.") (citation omitted); *Torres v. Commonwealth*, 228 A.3d 304, 308 (Pa. Cmwlth. 2020) ("Petitioner's counsel's statements are not evidence, and they are not sufficient to sustain Petitioner's burden.")[4] (citation omitted). Section 14-303(14)(f) of the Zoning Code confirms that in proceedings before the ZBA, "[s]tatements by a person's attorney on his or her behalf shall not be considered as testimony, except where agreed upon by the parties." Here, the parties did not agree counsel's statements would be considered testimony. *See* R.R. at 28-85. As a result, Landowner's counsel's statements after Jacob's testimony are not evidence.[5]

---

[3]  Landowner's counsel's further statements were designed to address the Zoning Code's variance criteria, as Landowner's counsel argued the proposed subdivision would not cause congestion in the neighborhood, would not impact light or air for neighbors, would not burden infrastructure, and would not "otherwise have any impact at all, zero impact on this community." *See* R.R. at 33. In addition, only Landowner's counsel addressed the financial burden of rehabilitating the Property through his arguments, stating "the financial burden to rehabilitate [the House] . . . is enormous." *See id.* at 41, 83. No witnesses testified regarding these issues on Landowner's behalf. *See generally id.* at 28-85; Section 14-303(14)(f) of the Zoning Code.

[4]  "The party seeking the variance bears the burden of proving" the variance satisfies the zoning ordinance's requirements for the variance. *See Schindler Elevator Corp. v. Dep't of Lab. & Indus.*, 303 A.3d 874, 882 (Pa. Cmwlth. 2023) (citation omitted). "The burden on an applicant seeking a zoning variance is heavy, and variances should be granted sparingly and only under exceptional circumstances." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 891 (Pa. Cmwlth. 2015) (citation omitted).

[5]  While I recognize "the formal rules of evidence do not apply in local zoning board meetings," *Zitelli v. Zoning Hearing Board of Borough of Munhall*, 850 A.2d 769, 771 n.2 (Pa. Cmwlth. 2004), the ZBA still must adhere to basic evidentiary principles. *See* Section 14-303(14) of the
**(Footnote continued on next page…)**

Landowner did not otherwise attempt to present evidence regarding the variance criteria in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h) of the Zoning Code. As a result, the ZBA was not presented with any evidence regarding the four variance criteria in Section 14-303(8)(e)(.1)(.d)-(.f) and (.h) of the Zoning Code, and I would conclude the ZBA erred in determining Landowner satisfied those four criteria.

## B. Landowner Created the Hardship

My second disagreement with the Majority is whether Landowner created the hardship on the Property. To obtain a variance in the City, an applicant must prove any "unnecessary hardship was not created by the applicant." *See* Section 14-303(8)(e)(.1)(.a) of the Zoning Code. Landowner asserted, and the ZBA concluded, the Property's unnecessary hardship is caused by the presence of an existing structure, which cannot be removed because the Property is listed on the City's Register of Historic Places. Landowner also asserted, and the ZBA also concluded, Landowner did not create this unnecessary hardship because the Property's historical designation occurred after Landowner purchased the Property.

While it is true the Property received its historical designation after Landowner purchased the Property, it is also true Landowner participated in the City's proceedings considering the Property for inclusion on the City's Register of Historic Places. Not only did Landowner's counsel attend the hearings, Landowner's counsel stated, on the record at those proceedings, that Landowner did "**not challenge the designation**" and did "**not object to the designation**." R.R. at

---

Zoning Code. The ZBA's hearing deviated from basic evidentiary principles on numerous occasions, including: (a) the ZBA Chairman placing the parties' counsel under oath, despite them not being witnesses (R.R. at 28, 35); (b) the ZBA Chairman stipulating to the admissibility of objected-to hearsay evidence even though the ZBA was not a party and did not have authority to enter stipulations of its own accord (*id.* at 69); and (c) the ZBA Chairman cutting off witness testimony because the ZBA was running out of time (*id.* at 76-77).

55 (emphasis added). Further, at the ZBA's hearing, Landowner's counsel admitted "we went along with it [(the historic designation)] to be good neighbors." *Id.*

The Majority interpreted Landowner's actions at the City's proceedings on the Property's historic designation as being "silence," which the Majority opines "can just as easily be construed as a 'tacit disapproval.'" *See In re: Appeal of Judy Berkman*, slip op. at 17. Nevertheless, Landowner's counsel's admission before the ZBA was "we went along with it." R.R. at 55. Regardless of why Landowner "went along with it," Landowner chose to attend the City's proceedings, had an opportunity to object to the Property's designation on the City's Register of Historic Places, and chose not to object. Even if an objection would have been futile, as the Majority alleges, Landowner should not be permitted to actively participate in hearings regarding the Property's designation on the City's Register of Historic Places, "go along with" the designation at those hearings, and then turn around and complain that the designation is an unnecessary hardship.

Consequently, I agree with Common Pleas' conclusion Landowner's conduct constituted an approval of the historic designation, and Landowner, therefore, participated in creating the hardship about which Landowner now complains. While I generally agree with the Majority's assertion that "[c]reating a hardship requires initiative," *In re: Appeal of Judy Berkman*, slip op. at 17, I believe the record reflects Landowner undertook the requisite initiative. Therefore, I would conclude, as Common Pleas concluded, that the ZBA erred in determining Landowner did not create its purported hardship.

## C. Minimum Relief Necessary

My final disagreement with the Majority is with its conclusion Landowner established its requested variance was the minimum variance to afford relief. The ZBA's relevant conclusions of law are as follows:

> 13. With regard to the "minimum necessary" requirement, the [ZBA] notes that the proposed subdivision complies with the [Zoning] Code requirements for lot size and meets all other dimensional requirements save for lot width – which it fails to meet solely due to the "flag lot" configuration of proposed Parcel B. Aside from the entrance "pole." However, lot B far exceeds the minimum required lot width.

> 14. Additionally, with regard to the "minimum necessary criterion, the [ZBA] found the expert opinions of architect Ian Toner, who testified that a by[-]right configuration would not be approved by the Planning Commission and that the proposed flag lot was both consistent with a better streetscape flow and "makes more sense in a situation like this," to be both credible and persuasive."

R.R. at 95.

The Zoning Code's "minimum necessary" criteria is whether the variance "will represent the minimum variance that will afford relief and will represent the least modification possible of the . . . dimensional regulation in issue." *See* Section 14-303(8)(e)(.1)(.b). Here, the "dimensional regulation in issue" is that lots must have 75 feet of road frontage. Landowner's proposed second lot has 15 feet of road frontage, which is an 80% reduction in the Zoning Code's requirement.

Whether the proposed subdivision complies with the Zoning Code's requirements for lot size is not relevant to whether a 60-foot deviation from the 75-foot street frontage requirement is the minimum deviation to afford relief. Nor is the fact that the proposed subdivision meets all other dimensional requirements or far exceeds the minimum lot width in other places. Whether the proposed subdivision provides the best streetscape flow is also not relevant to whether a

60-foot deviation from the 75-foot street frontage requirement is the minimum deviation to afford relief. Nor is it relevant that the proposed layout "makes more sense in a situation like this." Because these are the only considerations the ZBA relied upon, I would conclude the ZBA's Conclusions of Law Nos. 13 and 14 failed to apply Section 14-303(8)(e)(.1)(.b) of the Zoning Code's criteria.

The legal issue here should have been a straightforward one: is the proposed deviation from the Zoning Code's dimensional regulation the minimum deviation necessary to afford relief? In other words, could a 65-foot front lot width have worked? If not, why, and could a 50-foot front lot width have worked? If not, why, and could a 40-foot front lot width have worked? If not, why, and could a 30-foot front lot width have worked? Etc. The Property has 150 feet of street frontage. *See In re: Appeal of Judy Berkman*, slip op. at 3. Splitting it 75 / 75 may not have been possible due to the existing structure, but could more than 15 of the 150 feet have been allocated to the second lot?

Unfortunately, Landowner's presentation of evidence did not address this critical question. As a result, it is not possible to discern if the variance requested is "the minimum variance that will afford relief" and is "the least modification possible of the . . . dimensional regulation in issue." *See* Section 14-303(8)(e)(.1)(.b). Therefore, I would conclude the ZBA erred in concluding Landowner established its requested variance represented the minimum variance necessary.

For the reasons set forth above, I would affirm Common Pleas' order reversing the ZBA's decision to grant Landowner's requested variance.

_____
STACY WALLACE, Judge

SW - 8